IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHARLES PENLAND, ET AL.,            )

        Plaintiffs,                ) Case No.

    vs.                              ) 22-62L

UNITED STATES OF AMERICA,            )

        Defendant.                 )

Courtroom 4

Howard T. Markey National Courts Building

717 Madison Place, N.W.

Washington, D.C.

Monday, January 12, 2026

10:00 a.m.

Oral Argument

BEFORE:  THE HONORABLE MATTHEW H. SOLOMSON, Chief Judge

Reported by:  Karen Willoughby, CER, Digital Reporter

2

Charles Penland, et al. v. USA                    1/12/2026

APPEARANCES:

ON BEHALF OF THE PLAINTIFFS:

        MARK FERNLUND HEARNE, II, ESQ.

        MATT BELZ, ESQ.

        True North Law LLC

        112 S. Hanley Road

        Suite 200

        St. Louis, Missouri 63105

        (314) 296-4000

        thor@truenorthlawgroup.com

ON BEHALF OF THE DEFENDANT:

        JOSEPH H. KIM, ESQ.

        U. S. Department of Justice - (ENRD)

        Environment and Natural Resources Division

        Natural Resources Section

        P.O. Box 7611

        Washington, DC 20044-0663

        (202) 305-0207

        joseph.kim@usdoj.gov

Charles Penland, et al. v. USA                                    1/12/2026

P R O C E E D I N G S

-   -   -   -   -

(Proceedings called to order, at 10:01 a.m.)

LAW CLERK:  All rise.  The United States Court of Federal Claims is now in session, the Honorable Matthew H. Solomson presiding.

THE COURT:  Hello.  Good morning, everybody. Please have a seat.

We are on the record this morning in Penland vs. United States, Case Number 22-62.  If I could have counsel enter their appearance for the record, please, beginning with Plaintiff.

MR. HEARNE:  For the Plaintiffs, Your Honor, Thor Hearne, and with me is my partner, Matt Belz.

THE COURT:  Okay.  You'll be arguing today, Mr. Hearne?

MR. HEARNE:  I'll be arguing.

THE COURT:  Okay.  And for the United States?

MR. KIM:  Good morning, Your Honor.  For the United States, Joe Kim.

THE COURT:  All right.  Nice to meet you again in person.  I feel like we've been on the phone many times perhaps, but I'm not sure --

MR. KIM:  We have in a different case.

THE COURT:  We have?  Okay, all right.  Well,

welcome back.

MR. KIM:  Thank you.

THE COURT:  Okay.  Mr. Hearne, I'm going to have you take the podium first since most of my questions are for you, and we'll let the Government bat rebuttal.

I don't need an overview.  We're just going to jump in.

MR. HEARNE:  Certainly.

THE COURT:  Mr. Hearne, if I follow Judge Hadji's opinion and Bevirt, you lose, correct?

MR. HEARNE:  Well, that opinion is currently being reconsidered and --

THE COURT:  Okay.  Well, it's being reconsidered --

MR. HEARNE:  It --

THE COURT:  -- or it's on appeal.

MR. HEARNE:  No, it's being -- there's a motion to reconsider that was filed back in July, and it's now been fully briefed.

THE COURT:  Okay.

MR. HEARNE:  It's not --

THE COURT:  But if I follow the logic of it, you lose, right?

MR. HEARNE:  There's portions of it, but

Charles Penland, et al. v. USA                                1/12/2026

there was part of that decision that wouldn't apply. It's mostly a Rule 56 decision for --

THE COURT: Right, I understand there are portions that wouldn't apply. But if I follow his interpretation of the lease and his -- of the lease -- of the granting deed, and I apply McCotter the way he does and I apply the statute that's at issue, the North Carolina statute, like he does, you lose, correct? I'm going to ask it one more time.

MR. HEARNE: I think -- I think I would answer yes, Your Honor, that --

THE COURT: Okay.

MR. HEARNE: I think on the issues that we have in common with this case.

THE COURT: Okay. On page 16 of your brief -- of your corrected opening brief, page 23 of the PDF, Document 61 --

MR. HEARNE: I'm trying to find the right one, Your Honor. Here it is. I have that. Which page?

THE COURT: Page 16 of the pages on the bottom, page 23 of the PDF numbering on the top.

MR. HEARNE: Okay. Page 16 of my brief or is it page --

THE COURT: ECF 61, your opening brief.

Charles Penland, et al. v. USA                              1/12/2026

MR. HEARNE:  Okay, yes, I have that, page 23 of 36.

THE COURT:  Okay.  You say -- you call the Government's argument, frankly, stupid and frivolous. And you say, "No authority would hold these documents conveyed the railroad title to the fee simple estate in the land."

MR. HEARNE:  Yes, that's what it says --

THE COURT:  Do you see that?

MR. HEARNE:  -- I do say, yes.

THE COURT:  But one authority did so hold, correct?

MR. HEARNE:  Yes.

THE COURT:  That's Bivert, right?

MR. HEARNE:  Yes.

THE COURT:  That statement is wrong, isn't it?

MR. HEARNE:  That statement would be wrong. I would say a point of clarification to Your Honor concerning that brief.  When we filed that --

THE COURT:  This is the corrected brief you filed.

MR. HEARNE:  It is the wrong corrected brief.

THE COURT:  Well, that's not my problem.  You signed it and you filed it.

Charles Penland, et al. v. USA                              1/12/2026

MR. HEARNE:  No, it's my problem.  And --

THE COURT:  Okay.

MR. HEARNE:  It's on me, Your Honor.

THE COURT:  I don't hear anything more about that.

MR. HEARNE:  Okay.

THE COURT:  It's the second thing filed.  I'm not even sure that the corrective brief you filed had a motion for leave to file a corrective brief.  You just filed a corrective brief, right?

MR. HEARNE:  I believe we had some word --

THE COURT:  Right, right.

MR. HEARNE:  -- processing issues --

THE COURT:  You don't get 15 times to file a brief.  You file a brief, you sign it, you own it.

MR. HEARNE:  I understand that, Your Honor.

THE COURT:  That's Rule 11.  Okay.  I'm a little perplexed, though, because the Government filed a notice of supplemental authority about Judge Hadji's decision in June, late June.  It's ECF 52.  So we're almost ten ECF filings later, and you're still maintaining that there's no such case holds like what the Government has.

Do you want to withdraw the statement that it's stupid and frivolous?

Charles Penland, et al. v. USA                                    1/12/2026

MR. HEARNE:  I would withdraw that statement, Your Honor.

THE COURT:  Okay.

MR. HEARNE:  That was not intended to be in the final version.

THE COURT:  I think you repeated the same language in your reply.  You don't want me to go searching through your reply for that, do you?

MR. HEARNE:  If I did, I would withdraw that language, Your Honor.

(Pause in the proceedings.)

THE COURT:  Okay, all right.  Still staying in 6 in 61, I'd like you to look at ECF page 20. That's the stamped page number or on your page -- pagination, it's 13 on the bottom.

MR. HEARNE:  Yes, I have that page, Your Honor.

THE COURT:  I feel like we have to update our Court rules to make the PDF pages and the bottom pages match, but you write in the middle of that page, "The CFC's conclusion that the grantors of these seven voluntary conveyances intended to convey the railroad title to the fee simple estate in the strip of land is contrary to this authority."  What CFC's conclusion are you talking about?

Charles Penland, et al. v. USA                              1/12/2026

MR. HEARNE:  I was talking, in that case, about --

THE COURT:  When you say "CFC," do you mean the Court of Federal Claims or the --

MR. HEARNE:  Yes, Your Honor.

THE COURT:  -- United States Court of Appeals for the Federal Circuit?

MR. HEARNE:  No.  The CFC is what I would have been referring to, this Court, Your Honor.

THE COURT:  This Court?

MR. HEARNE:  Yes.

THE COURT:  But when you say, "The CFC's conclusion," and I don't see any citation -- you're not discussing anywhere in this section -- if we go back one page, you've got a cite to an 1869 treatise, an 1898 treatise, maybe a book, a bunch of Florida cases.  I don't see any discussion of a -- what CFC's conclusion?  What is that talking about?

MR. HEARNE:  I think that was an error, Your Honor, when we -- again, I own the brief.  It's my signature.  I adopt it.  And that -- to the extent a draft was filed instead of the final version, that's my fault.  But that's why that statement is there.

THE COURT:  Okay.  So you don't know what conclusion you're talking about there.  Do you think

Charles Penland, et al. v. USA                1/12/2026

the whole sentence is an error?

MR. HEARNE:  I would take that reference to the CFC out.  That would have been an error that would have been -- should have been corrected.

THE COURT:  Well, what is it talking about, "The CFC's conclusion that the grantors of these seven voluntary conveyances?"  What --

MR. HEARNE:  I believe that would have referred to the Government's argument that the seven --

THE COURT:  Okay.

MR. HEARNE:  -- conveyances is what was probably intended.

THE COURT:  Okay.  Next -- the next question I have is in the heading of that next heading, same page, page 13, right where we were.  You write in the heading, Number 2, on page 13 there, "North Carolina public policy strongly disfavors the creation of fee estates in strips or gores of land and presumes that strips of land are easements for a specific purpose."

I couldn't find a single citation in this section to North Carolina law, but maybe -- maybe I missed it.  Do you want to point it to me?

MR. HEARNE:  I don't find it in there. Again, Your Honor, I think this was a draft --

THE COURT:  So what's the basis for the

Charles Penland, et al. v. USA                                1/12/2026

assertion about North Carolina law?  Are you going to just say it's an error?

MR. HEARNE:  I'm going to say that the lack of a citation for the North Carolina case is an error, but I believe that North Carolina --

THE COURT:  Well, why don't you tell me now, then, what North Carolina case you meant to cite to.

MR. HEARNE:  I don't have that in front of me, Your Honor.

THE COURT:  So are you going to withdraw the whole argument about strips and gores with regard to North Carolina?

MR. HEARNE:  I would limit that to the fact that I did not cite a North Carolina case.

THE COURT:  I'm giving you the chance now to tell me which case you meant.

MR. HEARNE:  I don't know which one I meant on that statement, Your Honor.

THE COURT:  Okay.  So are you going to withdraw the argument about North Carolina because I don't see any support for it in the brief.

MR. HEARNE:  As to North Carolina, I will withdraw it.

THE COURT:  Okay.

MR. HEARNE:  But as to the strips and

Charles Penland, et al. v. USA

gores --

THE COURT:  You know, okay, there's some general common law in some other states, maybe.  Who knows how many, who knows where.  I guess you've established it, perhaps, for Florida.  I don't even know.  But with regard to North Carolina, I think we can say that's out, right?

MR. HEARNE:  Yes.

THE COURT:  Okay.

MR. HEARNE:  I didn't cite or say North Carolina.

THE COURT:  Okay.  I had the same question for the next Roman numeral on page 17.  Under North Carolina law, you write -- Roman numeral II -- "The only interest the railroad could acquire was a right of way and easement."  I see a --

MR. HEARNE:  Yes.

THE COURT:  -- citation to the Virginia Supreme Court.  I don't see a citation to anything about North Carolina law.

MR. HEARNE:  There is -- not that there, but the general principles of North Carolina law would be what I was referring to, not under that -- though I didn't cite a case under that specific heading.

THE COURT:  Wait, you cited a North Carolina

case?

MR. HEARNE: No, not in the brief, Your Honor. But that -- I was making a general statement of North Carolina cases that would have -- support that statement would be Vickers vs. Lee, Raleigh vs. Airline, Hodges --

THE COURT: Whoa, whoa. Pick your best one.

MR. HEARNE: I would say Vickers vs. Lee is a very good one. It's an old one. It's 10 S.E. 308.

THE COURT: Give me a second.

MR. HEARNE: And --

THE COURT: I'm going to pull it up.

MR. HEARNE: Yeah.

THE COURT: Is it cited in this brief anywhere?

MR. HEARNE: I don't believe it is cited in that brief.

THE COURT: Okay. Well, we're not going to talk about that then.

Can I ask you -- there's a quote you have on page 18 referring to something in North Carolina. You write, North Carolina limited what a railroad acquired, providing that, quote -- and then there's a quote on the top of page 18, but there's no cite for the quote. Page 18 of your brief --

Charles Penland, et al. v. USA                          1/12/2026

MR. HEARNE:  Yes, I'm --

THE COURT:  -- page 25 of the PDF.

MR. HEARNE:  Yes.  That case was not cited.  I did not have the citation.  But there's several cases that hold that --

THE COURT:  No, I'm asking you for that quote.  Where did that quote come from?

MR. HEARNE:  I believe that quote would have come from Raleigh vs. Airline, which is 26 S.E. 779.

THE COURT:  Hold on a second.  Twenty-six --

MR. HEARNE:  S.E. 779, an 1892 case.

THE COURT:  Okay.  I'm not sure the quote helps.

All right.  I have another next, kind of, question about what you wrote that I just don't understand.  This is an important assertion you make in footnote 12 on page 23.  "North Carolina is not unique in its construction of railroad conveyances as granting only a right of way and easement."  Where did you establish that North Carolina itself -- I understand these cites are for the proposition that there are other jurisdictions or -- for example, Idaho perhaps -- that holds this, but I was looking for the main support for the -- in other words, the -- when you write "North Carolina is not unique in its

15

Charles Penland, et al. v. USA                          1/12/2026

construction," the implication is that North Carolina actually holds that.

And my question is, where do you establish that rule, the underlying rule that North Carolina construes railroad conveyances as granting only a right of way and easement.  Where is the support for that assertion?

MR. HEARNE:  The one support for that in North Carolina would be Hodges vs. Western Union.

THE COURT:  Where is that cited in your brief?

MR. HEARNE:  It's not cited in the brief.

THE COURT:  Okay.  Well, we're not going to talk about it.

Okay.  Let's go back to the sample conveyance that you quote in this brief.  I understand from the Government's brief that this conveyance is not even an issue anymore on page 16 of your brief.

MR. HEARNE:  Okay.

THE COURT:  But I think all the parties agree that the conveyances are substantially similar.  I don't think anyone makes an argument that a ruling about one wouldn't apply to all of the conveyances at issue, right?  They're all substantially similar or identical.

Charles Penland, et al. v. USA                          1/12/2026

MR. HEARNE:  Yeah.  They're all almost -- they're not identical, but they're -- in material respects fairly identical.

THE COURT:  Right.  In material respect, there's no difference.  It's not like you could say, well, even if you agree with the Government about conveyance A, B and C, it wouldn't apply to D, E.  I don't think anyone makes that argument.  I don't think you make that argument or the Government makes that argument, right?

MR. HEARNE:  No.

THE COURT:  Okay.  So let me just ask the Government here quickly, while we're at it, I understand you pushed back on their citation of the Wilson conveyance because it's not at issue anymore in this case.  I think that's right.  Do you -- are you okay with us talking about it just because it's in his brief?

MR. KIM:  Yeah.  It is also similar, even if it's not one of the ten.

THE COURT:  Okay.  Well, we'll start with the Wilson, because that's what you start with.  I'm trying to figure out -- applying the North Carolina statute that says we presume conveyances are in fee simple, I'm trying to figure out where's the language that takes

Charles Penland, et al. v. USA                                 1/12/2026

away from that.

Now, you argue that the statute doesn't apply because you say that this wasn't a conveyance, it was a grant of an easement or a servitude of some sort, right?  Isn't that your argument?

MR. HEARNE:  I would make the argument, Your Honor, that that statute applies to the construction of estates in land and that a distinction between an estate and a servitude or an easement would --

THE COURT:  Right.  You say, "These --

MR. HEARNE:  -- would not apply.

THE COURT:  -- provisions of North Carolina law do not apply to servitudes, such as easements." That's what you say on page 25.

MR. HEARNE:  Correct.

THE COURT:  Okay.  But I'm looking at the -- at ECF -- at 60- -- you know, 61, where we are in your brief, at page 16, page 23 of the PDF.  You've got that big block quote of the Wilson what?  What do you call it?  The Wilson?

MR. HEARNE:  Conveyance.

THE COURT:  It's a conveyance?

MR. HEARNE:  Yes.

THE COURT:  Okay.  Isn't a conveyance exactly what you say this isn't.

Charles Penland, et al. v. USA

MR. HEARNE:  I make the distinction not on calling it a conveyance or an instrument, but calling it a -- of an estate in the land versus a granting of a servitude, such as an easement or right of way.

THE COURT:  Do you have authority for that argument?

MR. HEARNE:  Yeah, I look at the text of the statute itself.  I think it's quoted in the Lackey decision.

THE COURT:  Why doesn't McCotter show that you're wrong?

MR. HEARNE:  Because if I look at the text of the statute -- the --

THE COURT:  No, no, I understand, but I've got a North Carolina Supreme Court case applying the statute to a railroad deed, and it's literally the same question as in this case.

MR. HEARNE:  McCotter, very specifically, said that that was an estate in the deed and had different conveyancing language in McCotter. McCotter --

THE COURT:  In what way is the deed different in McCotter as in --

MR. HEARNE:  Well, it had covenants --

THE COURT:  Let me ask you this question, do

Charles Penland, et al. v. USA                                    1/12/2026

you discuss McCotter anywhere in your opening brief?

MR. HEARNE:  I don't know if I did in the opening brief.  I believe I did in the reply.

THE COURT:  Well, it's a response brief, too.  It's your opening motion, but it's your response to the Government's motion.

MR. HEARNE:  Right, yes.

THE COURT:  It's a response and a cross-motion.

MR. HEARNE:  Yes.

THE COURT:  Okay.  The Government relies on McCotter in its opening brief.

MR. HEARNE:  Yes.

THE COURT:  Okay.  And you just decided that you shouldn't address McCotter in this brief?

MR. HEARNE:  I didn't specifically cite McCotter, but I referenced the arguments that were raised or relied on in McCotter.

THE COURT:  All right.  Assuming I don't hold anything you have to say about McCotter waived for not addressing it in the opening brief, let's look at McCotter and let's compare it to the conveyance that you quote.

MR. HEARNE:  Yes.

THE COURT:  Okay.  One of the arguments that

Charles Penland, et al. v. USA                                    1/12/2026

you make is -- here, in this case, is that the sum of money, the nominal sum paid for whatever this is, is suggestive of a -- not a fee, but an easement.  But in McCotter, it was a $2 -- $2 payment.  Here, in your case before me now, it was $1, right?

MR. HEARNE:  Correct.

THE COURT:  You're not trying to distinguish between $1 and $2, are you?

MR. HEARNE:  I'm not distinguishing on that basis with the --

THE COURT:  Okay.  So I can't do anything with the -- with the amounts.  Whatever you have to say about the amount paid for this conveyance of whatever it is, the amount's not going to help you because the Supreme Court of North Carolina has spoken to that, right?

MR. HEARNE:  Yes.

THE COURT:  Okay.  And then they say it is -- the receipt of which is hereby forever admitted, released and remissed, having granted, bargained, and sold, and by these presence do hereby give, grant, bargain, and sell unto the party of the second part, its successors and assigns.  It describes the tract. That's the end of the story.

That sounds remarkably like what we've got

here in your Wilson conveyance.  Give, grant, bargain, sell and convey to the railway company and its successors forever.  What's the contrary language here?

          MR. HEARNE:  The -- When I read McCarter [sic], it says McCarter put great weight on --

          THE COURT:  McCotter?

          MR. HEARNE:  McCotter, excuse me.  Put great weight on the granting clause, on the fact that there was a warranty deed.  It also noted that it referenced the estate in the land, and the Court concluded there was a fee simple estate.  So the distinction I would make is that that's different from a right of way and easement.

          THE COURT:  Wait a minute.  Do you have the case in front of you?

          MR. HEARNE:  I have McCotter.  I'm at 334.

          THE COURT:  Okay.

          MR. HEARNE:  It was talking about that the deed was a fee simple estate with --

          THE COURT:  Well, it held that it was a fee simple.  I'm trying to figure out where you see something about "estate."

          MR. HEARNE:  Well, the --

          THE COURT:  I'm reading the -- I'm at 484 to 485.

MR. HEARNE:  Well, it said the Court wrote that it was an estate in --

THE COURT:  Yeah, the Court -- that's the Court's holding.  That's what the --

MR. HEARNE:  Right.

THE COURT:  -- Government relies on.  The Court says, look at this language, it's substantially similar to the language at issue in our case, and in McCotter, the Supreme Court of North Carolina held it was an unqualified fee simple estate.  But I'm trying to figure out what language do you have in the Wilson conveyance that would suggest that I should distinguish McCotter?

MR. HEARNE:  Well, again, I would distinguish it because there was not a warranty clause.  There was not a granting clause, such as there was in McCotter.  That was the basis for the Court in McCotter saying that it was a fee simple estate --

THE COURT:  By the way, they also -- McCotter also says that the fact that there was a right-of-way language in the McCotter deed did not change the fact that the conveyance was fee simple.

MR. HEARNE:  It did say that the --

THE COURT:  But you make the argument that right-of-way language takes away from fee simple right?

Charles Penland, et al. v. USA                                    1/12/2026

MR. HEARNE:  Yes, it --

THE COURT:  Okay.  Under McCotter, that's incorrect.

MR. HEARNE:  Well, I would note that in the -- International Paper, the Court read McCotter in that way, that that's --

THE COURT:  We'll get to International -- International Paper.  Do you quote -- do you discuss International Paper in your opening brief?

MR. HEARNE:  I don't believe it was cited.

THE COURT:  Okay.  But we'll talk about it anyway.  But let's stick with McCotter, first of all. You agree McCotter holds that the fact that a conveyance uses right-of-way language does not show that it was an intent to convey an easement.

MR. HEARNE:  I'm sorry, Your Honor, can you repeat that question?

THE COURT:  Sure.  The fact that a conveyance uses language like "right-of-way" does not mean that the conveyance is an easement.

MR. HEARNE:  No, that is not conclusive, but that is an indication of what the grantor intended.

THE COURT:  So McCotter held that -- right, that the right-of-way language doesn't necessarily mean that what is being conveyed is an easement.

Charles Penland, et al. v. USA                                    1/12/2026

MR. HEARNE:  It is -- you take the entire conveyance, the entire document, and you read it to determine the --

THE COURT:  And railroad use is also not dispositive either.

MR. HEARNE:  It does tell us what the grantor intended.

THE COURT:  I'm asking what McCotter held.

MR. HEARNE:  Well, yes, yes.

THE COURT:  The clause in the description -- says McCotter, the clause in the description purporting to limit the property to railroad use is also without significance.

MR. HEARNE:  Then what I look at was the International Paper where they said --

THE COURT:  Okay.  We'll get there, but I'm just talking about McCotter.

MR. HEARNE:  Yes.

THE COURT:  Okay.  If I apply McCotter here and don't distinguish it, you lose.

MR. HEARNE:  I don't know that I would, Your Honor, because, again, there was differences between the McCotter conveyance and the one we have at issue here, as I noted --

THE COURT:  No, if I say that if I were to

Charles Penland, et al. v. USA

hold that the deeds are not distinguishable.

MR. HEARNE:  If they're the same deed, then McCotter would --

THE COURT:  Okay.

MR. HEARNE:  But they would be --

THE COURT:  How are they different?

MR. HEARNE:  -- they would be read through the lens of --

THE COURT:  Show me the language --

MR. HEARNE:  -- International Paper.

THE COURT:  Show me the language that you quote from the Wilson conveyance that's substantially different from the language at issue in McCotter.

MR. HEARNE:  Well, it is -- it's -- the reference --

THE COURT:  What suggests an easement other than the -- you know, for the railway?  What else suggests easement?

MR. HEARNE:  It looked at -- what the McCotter Court, which is what I'm talking about now, at page 334, the Court analyzed that deed and said it was a -- manifestly a deed -- it is a railroad purpose deed.  And then it went on to say it fell under the statute for voluntary conveyances to a railroad.  And it interpreted it in light of that, but found that it

had -- that it had the covenants of seisin and warranty, that it was a bargain and sale deed.  And the ones --

THE COURT:  Well, no, it says the covenants of seisin and warranty harmonized with the fee previously granted.  So they held that the grant language constituted a fee simple grant.

MR. HEARNE:  And I think what --

THE COURT:  So I'm asking how does the language in -- that you quote in Wilson differ from the granting clause in the Barnes deed that's at issue in McCotter?

MR. HEARNE:  Well, I think when you take the language as a whole, the whole language that is quoted in the --

THE COURT:  Read me the language that you think creates an easement from Wilson.

MR. HEARNE:  In Wilson?

THE COURT:  Mm-hmm.

MR. HEARNE:  Well, I think the fact that it was for the -- in consideration for the benefits derived for the construction of a railroad through the premises.  I would note "through the premises."  They very clearly say that they intend to be maintained for a railroad use --

27

Charles Penland, et al. v. USA                                    1/12/2026

THE COURT:  We already did that.  We just got done to saying that the clause and the description purporting to limit the property to railroad use is without significance; that it's a restrictive covenant which is, at most, personal to the grantors and is no longer enforceable.

MR. HEARNE:  And that was under, I believe, the Marketing Title Act.  So it was treating this as a fee simple --

THE COURT:  No, it wasn't.

MR. HEARNE:  -- conveyance.

THE COURT:  Show me where that is.  Show me --

MR. HEARNE:  That --

THE COURT:  What?  I don't even know what you're talking about.  What act?

MR. HEARNE:  That may have been King, Your Honor.

THE COURT:  Well, I don't -- I mean, I'm looking at McCotter.

VOICE:  I found this on the web.

THE COURT:  Siri doesn't like us.

Counselor, you can't -- you can't make things up here.  I'm reading the paragraph.  I don't see any reference to any particular North Carolina statute.

Charles Penland, et al. v. USA                                        1/12/2026

It's just interpreting the lease -- the deed language.

MR. HEARNE:  Well, I was looking at how McCotter distinguished it from both the Hodges and the Shepard decision.

THE COURT:  Where do you see that discussion?

MR. HEARNE:  On McCotter page 335, on the right column where they were distinguishing the nature --

THE COURT:  That's the right-of-way language.

MR. HEARNE:  Correct.  That was talking about what was in Hodges and what was in Shepard v. Suffolk.

THE COURT:  Where's Hodges?  I don't see --

MR. HEARNE:  Hodges v. Western Union.

THE COURT:  Okay.  Hold on one second. Give me a second.  I mean, I see a citation to Hodges, but --

MR. HEARNE:  Correct.  It is distinguishing the Court's decisions in Hodges and Shepard, which is where it held that it's citing the general proposition.

THE COURT:  Well, no.  It says an examination -- the Court in McCotter says, "An examination of the Hodges case discloses that the deed there involved granted only a right of way and easement."  I'm not sure we have the Hodges language.  Why don't you tell

Charles Penland, et al. v. USA                                    1/12/2026

me what the Hodges deed says that made it an easement.

MR. HEARNE: Okay. I will find that for you very shortly, Your Honor.

THE COURT: Do you discuss Hodges in your brief?

MR. HEARNE: I did not cite Hodges. In the opening brief, I did not.

THE COURT: Yeah, well, I'm just trying to figure out from earlier -- from up above in McCotter, in 486, or if you're using the other cite, 335, it says the fact that it was described as being for railroad use is without significance.

MR. HEARNE: Well, that --

THE COURT: It seems to me you have to distinguish McCotter to win. I mean, you've already said that, right? If the deeds are the same, then McCotter controls.

MR. HEARNE: And I think International Paper does that and it does detail how it distinguishes McCotter.

THE COURT: Okay. Well, let's take a look at International Paper. Give me a second.

First of all, this is a Court of Appeals in North Carolina, right? This is an intermediate appellate court, not the Supreme Court.

Charles Penland, et al. v. USA                                    1/12/2026

MR. HEARNE:  That is correct.

THE COURT:  Okay.  In this case, the deed says -- and the Court in International Paper actually italicizes it at 233 and 234.  It says that it was -- what was conveyed was the right and privilege by their agents and servants to enter upon each and every tract or parcel of land belonging to or held by me, meaning the grantor, in quotes.

MR. HEARNE:  Yes.

THE COURT:  Okay.  Where is that -- what is the best language you have in the Wilson conveyance that looks like that italicized language?

MR. HEARNE:  Well, I use the descriptive language where it says in consideration of the benefits for the railroad through their premises is how they describe the interest.

THE COURT:  Where is that?

MR. HEARNE:  The first sentence.  And I'm looking at the Wilson --

THE COURT:  Right.  Maintain the standard gauge railroad through said premises.

MR. HEARNE:  Right.  And then it --

THE COURT:  Okay.

MR. HEARNE:  -- and then it describes that it was for the -- sufficient to locate, construct,

Charles Penland, et al. v. USA                          1/12/2026

operate, and maintain a standard gauge railroad through said premises.

THE COURT: But we already dealt with that. McCotter says the fact that I have right-of-way language or for-the-purposes-of-a-railroad language, none of that makes the conveyance not a fee simple. International Paper doesn't say that.

MR. HEARNE: Well, the word I was turning on was the word "through," describing the interest. It's --

THE COURT: That's your argument, the word "through?"

MR. HEARNE: That it's -- it's not -- it's describing a railroad through the property, not title to the estate in the land itself.

THE COURT: So wait, say that one more time.

MR. HEARNE: It's describing the use of the property through the property. It's not purporting to convey the title to the fee simple estate in the land.

THE COURT: In International Paper, did the statute that the Government relies upon apply or not?

MR. HEARNE: In International Paper? International Paper quotes it and the statute says -- and I'm quoting the statute, it's on page 234 of International Paper. It said, Conveyance shall be

construed to be a conveyance of fee unless "such conveyance in plain and express words shown or is plainly intended by the conveyance or some part thereof that the grantor meant to convey an estate of less" --

THE COURT:  And then read the last sentence.

MR. HEARNE:  Of less dignity.

THE COURT:  Keep going, last sentence.

MR. HEARNE:  Of less dignity.

THE COURT:  No, no, read the next sentence.

MR. HEARNE:  The deed in question predates the enactment of -- but that our date -- our deed does not predate the enactment of the statute --

THE COURT:  Right.  Which means that the statute applies to yours, but didn't apply here.

MR. HEARNE:  But I'm looking at the language of the statute itself.  And the statute itself says that the grantor meant to convey an estate of less dignity, meaning that --

THE COURT:  No, no, you're not -- you're missing the point.  The Court in International Paper is distinguishing McCotter on the grounds that, in McCotter, they applied G.S. 39-1 to the deed because the deed was created after the statute.  But they're saying we don't need to apply and we're not going to apply 39-1 because the deed in question predates the

enactment of the statute.

But the Government is telling me, follow McCotter and follow the statute because the statute applies.  You're saying no, follow International Paper.  I'm saying, how can I follow International Paper?  In International Paper, the statute didn't apply.

MR. HEARNE:  Well, I would say that the statute doesn't apply by the text of the statute itself, where it is referring to conveyances of an estate.

THE COURT:  Excuse me?  The statute doesn't apply, but the text of the statute applies?

MR. HEARNE:  No, the statute would be addressing future interests in estates of land, which is why it would not apply to a servitude.

THE COURT:  We're going to rewind.  We're going to go back.  In McCotter, did the -- did the Supreme Court of North Carolina apply the statute to the deed at issue?

MR. HEARNE:  It applied several statutes.  The voluntary --

THE COURT:  Did it apply the statute the Government is relying upon?

MR. HEARNE:  I would have to look back again and see.

Charles Penland, et al. v. USA                                    1/12/2026

THE COURT:  Okay.  I'll tell you where to look.  At 333 going into 334.

MR. HEARNE:  Yes, it noted that particularly --

THE COURT:  No, I apologize.  I don't think that was the right cite.  Maybe it was.  Wait one second.

Oh, yeah, here it is.  Yep.  It's at -- right before 485 or, you know, in the middle of 330- -- at the top of 334.  "The instant deed is a regular form deed of bargain and sale.  It recites a valuable consideration.  Upon the facts agreed on this record, the deed is presumptively a deed of purchase within the meaning of the section of the Act of 1871-72."

Do you see that?

MR. HEARNE:  Yes, I do see that, Your Honor.

THE COURT:  Okay.  So they implied a previous version of the statute that the Government is relying upon in this case to say, unless there's unambiguous language to the contrary, we presume a conveyance is in fee simple.

Now, I'm asking a very simple question.  Did International Paper say the same statute applied or did they say the same statute did not apply in its case?

MR. HEARNE:  They said that statute did not

Charles Penland, et al. v. USA                    1/12/2026

apply.

THE COURT:  Right.

MR. HEARNE:  But in quoting the statute, the text of the statute itself refers to an estate in McConnell [sic].

THE COURT:  But they're distinguishing McCotter on the grounds that the statute did not apply because -- because it was predating.  They tell you why they're not applying it.  In fact, to the contrary, they could have said your novel view.  They could have said, well, I'll tell you why we're not going to apply the statute, because one talks about -- well, the statute only refers to a conveyance, but it doesn't apply to a servitude.  That's not why they didn't apply 39-1.

They said they're not applying 39-1.  Why? Because the deed in question predates the enactment of the statute.

MR. HEARNE:  That's correct.

THE COURT:  I mean, I think that eviscerates your contention.  Why didn't they say what you say? Why didn't they say that the statute doesn't apply? Because this is clearly a servitude and not a conveyance.

MR. HEARNE:  They didn't get to that issue,

Charles Penland, et al. v. USA                    1/12/2026

but they noted the statute and they quoted the statute.

THE COURT:  Right.  And they tell us why they're not applying it --

MR. HEARNE:  Right.

THE COURT:  -- because it predated --

MR. HEARNE:  I agree.

THE COURT:  Okay.  But your lease does -- your deeds at issue here postdate the statute, right?

MR. HEARNE:  That's correct.

THE COURT:  Okay.

MR. HEARNE:  They do postdate the statute.

And Your Honor had asked about the language in McConnell distinguishing it from this conveyance, this Wilson one that's quoted.  I'd note, also, at page 334 of McConnell, the last paragraph --

THE COURT:  You keep saying McConnell, I think.  Do you mean McCotter?

MR. HEARNE:  McCotter, McCotter.

Where it begins, the addendum clause places no limitation and it quotes to have and to hold the aforesaid tract or parcel of land.  There is no to-have-and-hold language such as that granting language in these sets of conveyances.

THE COURT:  But that hurts your case, though, because the whole question in all of these cases -- and

Charles Penland, et al. v. USA

I've read 20 North Carolina cases.  The question in all of these cases is whether there are subsequent clauses to the granting clauses that take away from the grant -- from the grant.  Sometimes they're consistent, sometimes they're inconsistent.  And the question is, what do we do when there's an inconsistency?

Now, what the statute says is we presume fee simple unless there's clear language in the subsequent or other clauses.  And the question under the common law was that maybe the habendum clauses or the warranty clauses are ignored in favor of the granting clause.  And what Triplett held and other cases that you rely upon, which I have no problem with and I don't think the Government has a problem with either, is that, no, you should read them all in harmony if you can.

The problem is is that, for example, in some of these other cases at least, the habendum clauses or the warranty clauses make clear that it's merely an easement.  You've got no language in a habendum clause that suggests that.  They're not even an issue.  No one here is arguing to me -- you're not; I guess it would be your argument -- look at these three other clauses.  And it's a proof that, if you read them as a whole, I mean, yes, you cite all of the case law about reading instruments as a whole, but what language should I read

Charles Penland, et al. v. USA                    1/12/2026

as a whole that makes this an easement?

MR. HEARNE:  Well --

THE COURT:  Don't tell me the railroad language.  McCotter settles that.  Don't tell me right-of-way language.  McCotter settles that, too.  You need some other language that suggestion -- that suggests that the ability to use the land was somehow temporary or that there's a reversion.  There's no -- is there any reversionary language in your deeds?

MR. HEARNE:  There's a -- I think the purpose of -- there is no reversion --

THE COURT:  No, we've done that.  McCotter settles the purpose language.

MR. HEARNE:  I mean, I would -- the point I want to make and maybe it's a -- I'm putting too fine a point on it, Your Honor.  But I'm looking at the word "through" and I'm looking at what they said the property was -- the interest was being given to them for, which was a very specific purpose of maintaining a railroad.

THE COURT:  No, I understand that there's a purpose, but McCotter dealt with that.  And McCotter says, the purpose is not going to tell us that there's not -- it's not in fee simple.  We have a statute that says we presume it's fee simple, unless there's clear

Charles Penland, et al. v. USA                          1/12/2026

language to the contrary.  So you need some sort of reversionary interest or some sort of time-bounded grant.  I don't see any of that in the deed.

MR. HEARNE:  Again, our position -- and I think the Court --

THE COURT:  Okay.

MR. HEARNE:  -- understands it, but I don't want to beat a dead horse -- is just that when we read the entire language of it, it's clear that the grantor was intending to --

THE COURT:  Okay.  Yes or no, can you point me to reversionary language in any of the deeds?

MR. HEARNE:  There is no reversionary language.

THE COURT:  Okay, all right.  Is there any time-bounded language that that sets a time limit that says it's for this period of time?

MR. HEARNE:  There is language in almost all of them that says the railroad has to be constructed within five years.

THE COURT:  Right.  That -- all right.

MR. HEARNE:  And we -- I'll admit that it was --

THE COURT:  Is that condition satisfied in these deeds?

Charles Penland, et al. v. USA                    1/12/2026

MR. HEARNE:  We all believe that it was satisfied.

THE COURT:  Okay, all right.  Let me give the Government a chance to present.  Thank you.

(Pause in the proceedings.)

MR. KIM:  Thank you, Your Honor.

I think that we all agree that the dispute in this case is limited to what the proper interpretation of -- I believe there's ten railroad source deeds at issue in this case.  But as the Court's already discussed, we believe that under North Carolina law, these deeds all convey in fee simple.  And we believe that's shown by both McCotter and King Associates, which also shows that North King Carolina Courts are clear that that provision of North Carolina law we've been discussing applies in the context of railroad grants.

I'm happy to answer any questions you have, but I believe that Your Honor's kind of covered a lot of things that I was going to say and I don't need to belabor them.

THE COURT:  What do you think Plaintiff's strongest argument is?

MR. KIM:  I'm not sure.  I mean, obviously, as we noted in the briefs, they mostly don't engage in

Charles Penland, et al. v. USA                    1/12/2026

this argument, at least in the context of their response brief.  They do engage briefly in the context of the reply for their cross-motion.

What I will say, I think the strongest point that they could make is the International Paper argument.  But I think International Paper, beyond the question of whether it -- the deeds in that case predated or postdated the statute, I think that case provides a pretty good example of the limitations of our argument.  But I don't think they --

THE COURT:  In what way?

MR. KIM:  So I think they provide a pretty good example of when a deed has language that would essentially rebut the presumption or provide that kind of clear, express language.  So they did not have the things -- like the language that we have in these deeds about the strip of land or grant -- or land hereby granted, and they did have that right and privilege to enter and occupy --

THE COURT:  Yeah, it's right and privilege to enter.  I mean, I don't -- I mean, if I were writing this, I would have said that -- I would have said what the Court said here.  That the deed in question predates the enactment of the statute, that it doesn't apply.  And even if I were to apply it, I would hold

that the plain language of the deed is crystal clear that it only conveys an easement.

MR. KIM:  Correct.  And that's essentially what I was trying to say here.  So I think that is an example of language that does show that it's only intending to convey an easement.

You know, I think the point about whether the statute applies is wrong.  I think the statute applies to all conveyances of real estate, and it's just a question about how you're going to construe that conveyance, whether that conveyance is going to be deemed to be in fee, or it could also be deemed to be a lesser estate, such as a mere easement.  But what that -- I think that statute says is they're presumed to be in fee.  And what I think International Paper shows is an example of deed language that would only convey the mere easement.  But we don't have, obviously, that kind of language here in these ten deeds.

THE COURT:  All right.  Is there anything else that I missed in my discussion with Plaintiffs' counsel that you would want me to focus on so that I write a thorough opinion?  Is there something I missed?

MR. KIM:  No, Your Honor.

THE COURT:  Okay.  Thank you.

Mr. Hearne, I have a few more for you.

Charles Penland, et al. v. USA                          1/12/2026

(Pause in the proceedings.)

THE COURT:  By the way, you note on page 14 of the PDF pages of your reply that International Paper distinguishes its case on the grounds that the statute predated the enactment -- or that the conveyance predated the enactment of G.S. 39-1.  You acknowledge in your reply that that's the case.

MR. HEARNE:  Yes, I acknowledged that that --

THE COURT:  That one of the bases of distinguishing McCotter was because the statute was enacted after.

MR. HEARNE:  Right, I do acknowledge that.

THE COURT:  Okay.  In section -- I guess it's 2B, on page 15 of the PDF of your reply, you say, "Established canons of property law direct this Court to conclude the railroad only had an easement, not title."

MR. HEARNE:  I'm trying to make sure I have -- page 15 on my brief?

THE COURT:  On the PDF.

MR. HEARNE:  Which I -- okay.  I'm just trying to find where the Court is reading from.

THE COURT:  It's the header in Section 2B.

MR. HEARNE:  I'm looking at the wrong page. I'm looking at page 15, which is page 22 of 36.

44

Charles Penland, et al. v. USA                                    1/12/2026

THE COURT:  It's page 15 on the PDF header of ECF 62.

MR. HEARNE:  Oh, okay.  Page 15.  On that page, I have -- this is ECF document 61, page 15 of 36.  The header I have is a procedural background.

THE COURT:  I'm just trying to figure out --

MR. KIM:  Sorry, if I could clarify --

THE COURT:  -- where the North Carolina law is.

MR. HEARNE:  I don't believe I cited that North Carolina case.  I cite the Triplett when I get into the discussion, but --

THE COURT:  No, I'm talking about where you say, "Established canons of property law direct this Court to conclude the railroad only had an easement, not title to the fee simple absolute estate in the land."  It's on ECF 63.  I'm looking at your reply brief.

MR. HEARNE:  Oh, in my reply brief.  I'm sorry, I was looking, Your Honor, at the --

THE COURT:  That's why I kept saying ECF 63.

MR. HEARNE:  ECF 63.  Okay, I have that, Your Honor.  What page?  Page 15, you said?

THE COURT:  Yep.  Page 15 of the PDF.

MR. HEARNE:  Oh, okay.

THE COURT:  ECF 63.

MR. HEARNE:  Yeah, I have that.

THE COURT:  Middle of the page.

MR. HEARNE:  Yes, I see that, but you're looking at Header B?

THE COURT:  You say, "In our memorandum, we explained that North Carolina law -- that North Carolina follows established canons and principles of property law, including the centerline presumption and the strip and gore doctrine."  Do you see where you write that?

MR. HEARNE:  Yes.

THE COURT:  But you already conceded to me in your -- in our opening discussion that there's no citation to North Carolina law about the strip and gore doctrine.  And I'm not sure there was even anything in there about the centerline presumption, but we can look back.

MR. HEARNE:  I don't know if I cited a North Carolina case for that.  I cited the general doctrines of property law.

THE COURT:  Okay.  I want to understand a little bit -- try to understand at least about your view of this statute.  So you say that the statute that the Government, in part, relies upon says that it

Charles Penland, et al. v. USA                                    1/12/2026

concerns, as we were talking about before, the construction of conveyances that apply to estates and land.  Isn't the question -- isn't the whole point of the statute that there's a presumption about what is conveyed?

MR. HEARNE:  When the conveyance -- my understanding of this statute -- and it's a model statute that literally most states have and literally the same language.  Florida has it, North Carolina has it, Missouri has it.  And it is a statute that was adopted late 1800s, early 1900s to eliminate -- we include a law review article that discusses that in North Carolina, specifically, where it was adopted to get rid of conveyances or ambiguities about conveyances that had future interests, future estates in conveyances.

And the presumption is that it's the conveyance of the fee estate if it is purporting to be a conveyance of a fee interest in the property.  But if it is not a conveyance of a fee interest, such as a servitude or easement or a right of way, then in that event, that statute, as our understanding is, would not apply to that presumption.  Would not apply.  Because if you --

THE COURT:  Is that true, though?  Is that

Charles Penland, et al. v. USA                    1/12/2026

because the statute -- I mean, I guess it gets circular to me.  I'm trying -- this is what -- I'll say my question like this, I guess.  You have a conveyance of something and one party says it's a conveyance of an estate in fee simple, and another party says it's a conveyance of an easement or a servitude.

For your -- your argument seems like a tautology, because for me to say that this doesn't apply -- the statute doesn't apply like you're saying, I first have to agree with you that it's an easement. And once I say it's an easement, well, yeah, then I wouldn't apply this because this has to do with presumptions.  So if I agree with you that it's an easement, then it wouldn't make any sense to apply a statutory presumption about what the thing is.  The whole point is the statute's supposed to help when -- when it's not clear, right?  That's the point of a presumption.

MR. HEARNE:  It is -- a particular category of conveyances is where I understand the statute to apply.  That category would not include right of ways that were --

THE COURT:  But how do you -- okay.  It's an analytical question.  How do I decide whether the statute applies without first resolving the underlying

Charles Penland, et al. v. USA                    1/12/2026

disagreement?

MR. HEARNE:  Well, I think we'd look first at the language of the conveyance and what the grantor intended.  And when we look at the language, as I looked at the language, what I see is a grantor intending to get a --

THE COURT:  Well, no, I mean, there's no reversionary language --

MR. HEARNE:  No.

THE COURT:  -- and it doesn't use the word "easement."

MR. HEARNE:  No.

THE COURT:  And it uses the word "convey," and it says language of forever to the -- what's the word?  What's the precise word?

I'm just going to go back and look at the Wilson conveyance.  Convey to the railroad company and its successors forever.  So when I read that, it says to me, fee simple conveyance, they own it.  It looks to me like ownership, not a right.  It doesn't look anything like the International Paper deed.  So you're saying to me and I'm saying -- and, moreover, in a case of doubt, the statute tells me it's fee simple.  And you're saying, no, don't apply the statute because it's not fee simple, it's an easement, and the statute

Charles Penland, et al. v. USA

doesn't apply just to easements.

But that -- I'm saying -- my point is the tautology is to not apply the statute for the reasons you're saying, I'd first have to agree with you that it's an easement.

MR. HEARNE:  You would have to agree that the conveyance is not intended by the grantor -- I would frame it this way, that the conveyance in the grantor's -- taking all the text of the conveyance, does not indicate the grantor intended to convey a fee or estate in the land that's subject to the conveyance.  And by that, I mean, it could be any type of conveyance of fee estate, of revertable fee, a reversionary fee, a remainder fee, all those different qualified kinds of a fee estate would be all --

THE COURT:  You're saying if you -- if you conclude -- well, I don't know.  This doesn't say fee simple.  This says when real estate is conveyed this -- and this is a conveyance.  That's, you know, both how you describe it, and it uses the word "sell," "convey." I mean, "sell," by the way, sounds like an estate. We're selling something.  What am I selling?

MR. HEARNE:  You can sell an easement.

THE COURT:  Now, you can sell a right to access.  But then I would expect the International

Charles Penland, et al. v. USA                                    1/12/2026

Paper language of "right to access."

MR. HEARNE:  I think -- I will also --

THE COURT:  It's convey.  It's selling a strip of land.

MR. HEARNE:  It is a right for a purpose for a railroad over a strip of land.

THE COURT:  Well, no, the purpose is specified, but we've already dealt with that from McCotter.  Purpose is not dispositive.

MR. HEARNE:  I would --

THE COURT:  Purpose does not prove that this is an easement.

MR. HEARNE:  Well, I think the -- again, the Court --

THE COURT:  Just tell me an -- give me an example of when the statute would apply.

MR. HEARNE:  When the statute would apply, if there's some conveyance of a fee estate or estate.  If somebody says, I give you my land and estate for this purpose with this restriction, that if you don't build it within so many years or you have a life estate or a remainder or --

THE COURT:  And what would be the argument between the parties based on the language that you just used?  One side would contend what and the other side

Charles Penland, et al. v. USA                      1/12/2026

would contend why and how would the statute help?

MR. HEARNE:  Well, the law review article that we've attached gives a number of examples of these kind of conveyances where the statute is used to apply and the presumption is.  So when there's confusion about was this just a life estate that was being conveyed or was it a remainder interest, what is the language in the deed?  And the statute was adopted to avoid those kind of disputes over future interests in estates.

And it used to be they had very strict drafting rules.  You had to use words like "and the heirs of his body," things of that nature, to make sure it was an estate that was being conveyed that was not -- that was restricted.  And what the statute did is said, we're going to simplify this, we're going to create a presumption that this kind of conveyance of an estate is presumed to convey the grantor's entirety of their interest in the estate and not to reserve an interest in the state in --

THE COURT:  All right.  So forgive my ignorance here.  Is a conveyance in fee -- does that always mean fee simple?

MR. HEARNE:  Fee is simply a word of inheritance.  The word "fee," just the word itself,

means that that interest can be inherited or passed on by devise to a future owner.

THE COURT:  Meaning as opposed to a life estate or -- correct.

MR. HEARNE:  So a fee -- we use the words, a lot of times, as a shorthand, a fee versus easement. But what you have is a fee -- you know, the full phrase would be a fee, simple, absolute estate.  That would be the fee with no restrictions, no reversionaries, no remainder interest imposed on the easement.  And that's what the statute presumes.  But that wouldn't necessarily arise when we have a servitude, such as a right of way, if the statute were presumed --

THE COURT:  Okay.  Let me just put it this way, because I think we can kind of just cut to the end of this.  Your argument, though, would, in fact, require me to first agree with you that this is a servitude in order to reject the application of the statute.

MR. HEARNE:  I would phrase it this way, Your Honor, if I were saying it.  Sort of the mirror image of that.  I would say my argument would require that you look at the conveyances and the -- from the conveyance, conclude that the owner intended to not convey or to convey a fee estate.

THE COURT:  That's the same thing that I said.  I have to conclude that the conveyance is an easement and not in fee or not --

MR. HEARNE:  Correct, yeah.  You'd have to conclude that it was a --

THE COURT:  Not an estate.

MR. HEARNE:  An estate and land is what -- is our --

THE COURT:  Are you saying that an estate of -- that an easement is not an estate of less dignity?  In other words, it's not an estate at all?

MR. HEARNE:  It's not an estate.  It's a servitude, which is a right to use the land.  It's a very different animal.

THE COURT:  Nevertheless, in order to say that this statute doesn't apply, I have to first agree with you that the plain language, construed as a whole, of the conveyance is of an easement and -- or a servitude and not an estate.

MR. HEARNE:  Correct.

THE COURT:  And if I can agree with you about that, then the statute doesn't apply.

MR. HEARNE:  That's correct, Your Honor.

THE COURT:  Okay.  I think I can say your argument a little bit better.  What you're really

Charles Penland, et al. v. USA                    1/12/2026

saying is I should do that exercise and not apply the statute at all.  And if I agree with the Government that it's -- you know, that it's a conveyance of a fee, so be it.  And if I agree with you that it's an easement, then the statute doesn't help them.

MR. HEARNE:  That's --

THE COURT:  So either way, the statute is irrelevant.  That's what you would say.

MR. HEARNE:  That's what I would say, Your Honor.

THE COURT:  Okay.

MR. HEARNE:  That's correct.

THE COURT:  Thank you.

MR. HEARNE:  You're more articulate than I was in voicing that.

THE COURT:  I think so.  All right.  I appreciate it.  Thank you.

Let me just -- I want to hear -- okay, yeah. Do you have anything else to add?

MR. HEARNE:  One last point I wanted to bring --

THE COURT:  Sure.

MR. HEARNE:  -- to the Court's attention is King Associates vs. Bechtel.  There the Court --

THE COURT:  Which case?

Charles Penland, et al. v. USA

MR. HEARNE:  This is King Associates.  It's cited by the Government.

THE COURT:  Yeah, I had it pulled and I've read it and -- is this discussed in your opening brief?

MR. HEARNE:  Not in my opening brief, no.

THE COURT:  Is it discussed in their opening brief?

MR. HEARNE:  I believe so, and I think it's --

THE COURT:  Then you've waived.

MR. HEARNE:  -- in their reply.

THE COURT:  If they discussed it in their opening and you didn't discuss it --

MR. HEARNE:  I don't know if they did in their opening.  I know they did in the reply.  I'd have to look back at the pleadings.

THE COURT:  Let me check.  Oh, well, I don't think -- the Government's opening brief may not have a TOC, because it's short enough to avoid the table of authorities, rather.  But I think they relied on -- they do rely on King, ECF 51 at PDF page 10.  The Government says, "Under North Carolina Supreme Court and the Court of Appeals decision in McCotter and King the source deeds," blah, blah, blah.

Why don't you say what you -- what you want

Charles Penland, et al. v. USA                          1/12/2026

to say about it.  You know, whether I hold it waived or not I'm reserving.  So I don't want you to construe my letting you speak about it as an acceptance of the argument, but go ahead.

MR. HEARNE:  I was just going to point the Court to the statement in King on page 247, and that's 632 S.E.2d at 247, where the Court specifically addresses McCotter and the use of the language "over" in there and they talk about -- and this is the quote from the King opinion.  "The McCotter Court indicated that a right of way over" -- emphasis on over -- "a parcel of land is merely an easement over the land and not a fee simple interest."  And then they cite in support of that, also, International Paper and the Shepard case.  And I just wanted to bring that to the Court's attention.

THE COURT:  Hold on one second.  Let me just read it.  I don't have these things memorized.

By the way, you see that King says that the term "right of way" did not reduce the fee simple interest to an easement.

MR. HEARNE:  Yes, they do cite that from --

THE COURT:  Okay.

MR. HEARNE:  But I was emphasizing that language about McCotter said when there are --

Charles Penland, et al. v. USA                    1/12/2026

THE COURT:  No, in Shepard, the Plaintiff conveyed to the railroad company a right of way over the land only.  The McCotter Court indicated that a right of way over a parcel is merely an easement, I guess, distinguishing Shepard.

MR. HEARNE:  They distinguish it over. That's correct.  And the reason I bring that --

THE COURT:  But the key point is --

MR. HEARNE:  -- the description of the interest granted as being over the property and it's -- in these -- these conveyances, it says, through the property and -- or through my premises.  And it describes a strip of land beneath --

THE COURT:  No, it says, convey to the railroad company a strip of land of sufficient width upon which to locate, construct, operate, maintain a standard gauge railroad through said premises.  It doesn't convey a right through said premises.

MR. HEARNE:  It does not use the word "right," but it does refer to "through."

THE COURT:  The object of the verb "convey" here is strip of land.  Convey a strip of land.

MR. HEARNE:  And we would --

THE COURT:  How big is this -- how big is the -- how big is the strip of land?  Sufficient width upon

Charles Penland, et al. v. USA                                    1/12/2026

which to locate, construct, operate, maintain a standard gauge railroad through the premises.

MR. HEARNE:  Yes, that's what --

THE COURT:  That's what is conveyed.

MR. HEARNE:  And the first sentence of it is to build -- to construct the railroad through their premises, meaning the owner's premises.  So that's the point we're making, is that it describes the railroad's interest as through the land, which is similar to describing as over the land.

THE COURT:  Yeah, but there you have the right of way over.  Hey, I'm the one that's doing -- construe it as a whole.  I think I could agree with you that if what was conveyed -- if this said convey to the railroad company and its successors forever a right of way over, I think you'd win.  That's not what your deeds say.  And, in fact, you should not like this case either.

King and Associates distinguishes International Paper in a way that is decidedly unhelpful for you.

MR. HEARNE:  Yeah, King --

THE COURT:  In arguing that the deed in the case created only an easement, Plaintiff's cite to International Paper.  But then they go on to say, but

Charles Penland, et al. v. USA                          1/12/2026

in International Paper, what was granted was a right and privilege and no land was conveyed.  This literally says, I convey a strip of land forever.  I don't think King helps you.  I mean, I'll go back and read it.  And I'll go back and I'll read Shepard, also.

MR. HEARNE:  Thank you, Your Honor.  I don't have anything further.

THE COURT:  All right.  I think we can wrap this up, Counsel.  I just want to have you address that statute again.  I have to admit I see his point a little bit.  I don't think it's necessarily consistent with McCotter or any of these other cases, and I don't know if other jurisdictions treat this presumption language differently.  Maybe I'll go take a look at the law review article.  But I kind of see his point, which is that maybe what the Court should do is construe it first, and if it doesn't apply to easements, then the statute's out.  Who cares about the statute?

MR. KIM:  I don't think that's right.  I'm not sure it makes a big difference.

THE COURT:  It doesn't strike me as right either, but I guess I get the argument.  So what's the response to the argument?

MR. KIM:  Well, what I would say is I think the statute applies, period.  It might not apply in the

International Paper context if the -- if the deeds predate the statute.  But, otherwise -- and we don't have that situation -- the statute applies.  And I think what Plaintiff said is, well, it might not apply to an easement because an easement is not an estate.  And I don't think that's consistent with what the statute is talking about.

The statute talks about, at the end, an estate of less dignity.  And I think that's referring to an easement.  So it's --

THE COURT:  That's how I had read it.

MR. HEARNE:  Right.

THE COURT:  But I think what Plaintiff is positing is that an estate -- an easement is not an estate.

MR. HEARNE:  Right.

MR. KIM:  And I just don't think that's correct.  I think consistent with this statute, an easement is another kind of estate.

THE COURT:  Watch it be really easy when I go to Westlaw --

MR. KIM:  It's not an estate in fee.

THE COURT:  -- when I go to Westlaw and I type in "easement" within three words of estate, right?  I mean, courts are going to say this conveyed an estate

Charles Penland, et al. v. USA

consisting of an easement or something.

MR. KIM:  Right, right.

THE COURT:  And if they do, that's done.

MR. KIM:  Right.

And the only other point I'll make -- and you can stop me if this is not helpful -- I think Plaintiffs have gotten somewhat sidetracked by -- it is true that this statute has this clause in there about whether the word "heirs" shall be used or not.  I don't think that applies.  Heirs aren't used in any of these deeds.  And the law review article that they recently submitted, but then cited to, perhaps, incompletely, you know, it's about the rule of Shelley's case.

And I'll be the first to admit that I'm no expert on the rule of Shelley's case.  I haven't thought about it since law school or the bar exam.  But it's just not an issue that --

THE COURT:  I definitely haven't.

MR. KIM:  It's not just an issue that's present in this case.  This case does not -- I mean, there could have been an issue at one time that this statute fixed about what you would do with deeds that did or didn't have the word "heirs," and whether that was something that would trip up your interpretation. But that's just not an issue in this case, and I think

it's just ends up being an irrelevant kind of sidebar.

THE COURT:  Right.  The way I read that phrase as being -- of the statute in these cases was that when there was competing language about whether it was a fee simple or a life estate or an easement and there was some debate about different clauses, and then one party would point to the language of heirs to say, look, it's a fee, then what the statute comes and says is no, the use of the magic word "heirs" does not add anything.  It doesn't mean that it is a fee and it doesn't mean that it's not a fee.  We don't care about the -- the magic word "heirs" is out.  It doesn't prove anything.

MR. KIM:  I think that's right.  And I think it also goes to --

THE COURT:  And that's why I think the deed that you have at issue here is better, because instead of using the magic word "heir," it says -- at least in the Wilson deed, is it "successors?"  Is that what the word is?

MR. KIM:  Right.  And that's in part because the grantee is not a --

THE COURT:  It's not a person.

MR. KIM:  -- it's not a person.

THE COURT:  Right.

Charles Penland, et al. v. USA                                    1/12/2026

MR. KIM:  So just another reason why it doesn't apply here.

THE COURT:  But when you say "successors forever," that starts to sound to me like a fee simple grant or conveyance.

MR. KIM:  Right, right.  And, obviously, you know, that particular railroad back in the -- 100 years ago is not the same railroad that, you know --

THE COURT:  Right.  But this is the successor --

MR. KIM:  Right.

THE COURT:  -- railroad, right?  No one disputes that here.

Okay.  I understand.  I understand your point.  Thank you.

MR. KIM:  Thank you.

THE COURT:  I don't have anything further unless you do.

MR. KIM:  No.  Thank you, Your Honor.

THE COURT:  Mr. Hearne, I just have one more question that you can answer from there.  Do you have any North Carolina authority for the proposition that the statute does not apply to arguments over fee simple versus an easement?

MR. HEARNE:  The authority that I would cite

-- North Carolina authority is the authorities that are cited in the law review that are North Carolina Supreme Court cases that he cites explaining the purpose of the statute, the application of the statute as applying to fee interest in a fee estate is distinguished from other kinds of interests.

THE COURT:  Okay, I'll take a look.  Do you have anything further?

MR. HEARNE:  I have nothing further, Your Honor.

THE COURT:  Okay.  Anything further?

MR. KIM:  No, Your Honor.

THE COURT:  All right, we're adjourned. Thank you all very much.

(Whereupon, at 11:11 a.m., the proceedings were adjourned.)

65

Charles Penland, et al. v. USA                                      1/12/2026

                        CERTIFICATE OF TRANSCRIBER


        I, Elizabeth M. Farrell, court-approved
transcriber, certify that the foregoing is a correct
transcript from the official electronic sound recording
of the proceedings in the above-titled matter.




DATE:  1/13/2026          S/Elizabeth M. Farrell
                          ELIZABETH M. FARRELL, CERT