IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHARLES J. and CAROLYN B. PENLAND, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 22-62L |
| UNITED STATES OF AMERICA, | ) ) | Judge Matthew H. Solomson |
| Defendant. | ) ) | |

# MARK F. (THOR) HEARNE, II'S RESPONSE TO SHOW CAUSE ORDER

| | |
|---|---|
| MARK F. (THOR) HEARNE, II | ARTHUR D. BURGER |
| True North Law, LLC | Jackson & Campbell, p. C. |
| 112 S. Hanley Road, Suite 200 | 2300 N Street, N.W., Suite 300 |
| St. Louis, MO 63105 | Washington, D.C. 20037 |
| (314) 296-4000 | (202) 457-1600 |
| thor@truenorthlawgroup.com | aburger@jackscamp.com |
| | |
| *Counsel for the Landowners* | *Counsel for Mark F. (Thor) Hearne, II* |
| | *Joining the Response as to Rule 11 Standards* |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................III

INTRODUCTION ...............................................................................................................1

    I.    Plaintiffs' representations should be evaluated under the "bad faith" standard. .............. 1

        A.    The Scope of Respondent's Contention Regarding Rule 11 Standards. .................. 1

        B.    Why the Bad Faith Standard Should Apply to Show Cause Orders. ....................... 2

        C.    The Federal Circuit and *Oak Grove*. ........................................................................ 4

    II.    Responses to the Court's Questions Regarding the Four Legal Assertions..................... 5

    III.  The North Carolina Statute, the DeLoatch Article and *McCotter v. Barnes*.................. 13

CONCLUSION....................................................................................................................20

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*1-10 Industry Associates*,
2007 WL 5160385 (Fed.Cl. 2007) ......................................................................... 4

*1-10 Industry* Associates*, LLC v. United States*,
528 F.3d 859 (Fed. Cir. 2008) ........................................................................... 3, 4

*Artis v. Artis*,
47 S.E.2d 228 (1948)......................................................................................... 16

*Barber v. Miller*,
146 F.3d 707 (9th Cir. 1998) ............................................................................... 3

*Barker v. Southern Ry. Co.*,
49 S.E. 115 (N.C. 1904) ...................................................................................... 9

*Beasley v. Aberdeen & Rockfish R. Co.*,
59 S.E. 60 (N.C. 1907). ECF 61 ......................................................................... 7

*Blue v. Aberdeen & W.E.R. Co.*,
23 S.E. 275 (N.C. 1895) ...................................................................................... 9

*Carolina Cent. R. Co. v. McCaskill*,
94 N.C. 746 (1886)............................................................................................. 9

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ............................................................................................. 1

*Craig v. Southern Ry. Co.*,
138 S.E.2d 35 (1964).............................................................................. 18, 19, 20

*Crawford v. Wilson*,
257 S.E.2d 696 (N.C. App. 1979) ................................................................. 18, 19

*Goss v. Stidhams*,
315 S.E.2d 777 (1984)......................................................................................... 7

*Hill v. Railroad,*,
32 Vt. 68 (1859) ................................................................................................. 8

*Hodges v. Telegraph Co.*,
45 S.E. 572 (S.C. 1903)....................................................................................... 8

*Hunter v. Earthgrains Co. Bakery*,
281 F.3d 144 (4th Cir. 2002)........................................................................... 2, 3

*In re Pennie & Edmunds, LLP*,
323 F.3d 86 (2nd Cir. 2003) ............................................................................... 3

*International Paper Co., v. Hufman,*
  345 S.E.2d 231 (N.C. App. 1986) ...................................................................... 17, 18

*Jenkins v. Methodist Hospitals of Dallas, Inc.,*
  478 F.3d 255 (5th Cir. 2007) .................................................................................. 3

*Kaplan v. ChryslerDaimler,*
  331 F.3d 1251 (11th Cir. 2003) .............................................................................. 3

*Kilopass Tech, Inc. v. Sidense Corp.,*
  738 F.3d 1302 (Fed. Cir. 2013) .............................................................................. 1

*Lackey v. Hamlet City Bd. of Ed.,*
  128 S.E.2d 806 (N.C. 1963) ........................................................................... 10, 12

*Leo Sheep Co. v. United States,*
  440 U.S. 668 (1979) .............................................................................................. 14

*Marvin M. Brandt Revocable Trust v. United States,*
  572 U.S. 93 (2014) ................................................................................................ 14

*McCotter v. Barnes,*
  101 S.E.2d 330 (N.C. 1958) ....................................................................... 12, 13, 16

*McDonald's Corp. v. Dwyer,*
  432 S.E.2d 165 (N.C. App. 1993), *aff'd* 450 S.E.2d 888 (N.C. 1994) .................. 6, 7

*Muhammad v. Walmart Stores East, L.P.,*
  732 F.3d 104 (2nd Cir. 2013) .................................................................................. 3

*Naglee v. Alexandria & F.R. Co.,*
  3 S.E. 369 (Va. 1887) .............................................................................................. 7

*Oak Grove Technologies, LLC v. United States,*
  114 F.4th  (Fed. Cir. 2024) .................................................................................. 2, 5

*Preseault v. United States,*
  100 F.3d 1525 (Fed.Cir. 1996 (*en banc*)) ..................................................... 7, 8, 9, 17

*Raleigh & A. Air-Line Co. v. Sturgeon,*
  26 S.E. 779 (N.C. 1897) .......................................................................................... 9

*Ruffin v. Seaboard Air Line Ry.,*
  66 S.E. 317 (1909) ................................................................................... 15, 16, 18, 19

*Seaboard Air Line R. Co. v. Olive,*
  55 S.E. 263 (N.C. 1906) .......................................................................................... 9

*Seawell v. Hall,*
  116 S.E. 189 (N.C. 1923) ....................................................................................... 12

*Shephard v. Horton,*
  125 S.E. 539 (N.C. 1924) ....................................................................................... 12

*Sparrow v. Dixie Leaf Tobacco Co.,*
  61 S.E.2d 700 (N.C. 1950) ...................................................................................... 9

iv

*Thomas v. Railroad Co.*,
  101 U.S. 71 (1879) ............................................................................................. 7

*Tighe v. Seaboard Air Line R. Co.*,
  97 S.E. 164 (1918) ............................................................................................. 9

*Triplett v. Williams*,
  63 S.E. 79 (N.C. 1908) ..................................................................................... 12

*Troy & Boston R.R. v. Potter*,
  42 Vt. 265 (1869) ............................................................................................... 8

*United National Insurance Company et al., v. R&D Latex Corp.*,
  242 F.3d 1102 (9th Cir. 2001) ........................................................................... 3

*Vickers v. Leigh*,
  10 S.E. 308 (N.C. 1889) ................................................................................... 11

*White v. Woodard*,
  42 S.E.2d 94 (N.C. 1947) ................................................................................... 7

*Whitley v. Arenson*,
  12 S.E.2d 906 (N.C. 1941) ............................................................................... 14

*Young v. City of Providence ex rel. Napolitano*,
  404 F.3d 33 (1st Cir. 2005) ............................................................................... 3

**Statutes**

N.C. Gen. Stat. Ann. § 1-44.2 ............................................................................... 6

N.C. Gen. Statute § 39-1 (2024) ........................................................... 10, 11, 12, 14

**Rules**

Court of Federal Claims Rule 11 ........................................................................... 5

**Other Authorities**

*Adv. Comm. Notes*,
  146 F.R.D. 401 (1993) .................................................................................. 1, 2, 4

**INTRODUCTION**

Undersigned counsel for Plaintiffs, Mark F. (Thor) Hearne, II, (Respondent), respectfully submits this response to the Court's Order to Show Cause of January 13, 2026, ECF 69, (Order.)

Respondent begins with a legal argument prepared by Arthur D. Burger, who has entered a limited appearance as Mr. Hearne's counsel regarding the Rule 11 standard that should be applied. Respondent provides answers to each of the Court's questions and provides further information and explanation regarding his representations. For all the reasons set forth below, Respondent asks the Court to conclude that he should not be sanctioned.

## I.   Plaintiffs' representations should be evaluated under the "bad faith" standard.

### A.   The Scope of Respondent's Contention Regarding Rule 11 Standards.

In its Order, the Court stated that the standard of objective reasonableness will apply to its consideration of sanctions under Rule 11, citing *Kilopass Tech, Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013) and *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). Order, p. 1-3. The Court also cited the Advisory Committee Notes to the 1993 amendments to Rule 11, referring to the objective standard as intended to eliminate use of "empty-head pure-heart" explanations as sufficient.[1] *Id*. at p. 2.

Respondent agrees that the objective standard applies when assessing an opposing party's *motion* for sanctions under Rule 11(c)(2), for which the safe harbor procedures are required. Respondent respectfully submits, however, as several circuit courts have concluded and as

---

[1] The statement of the Advisory Committee was: "Arguments for extensions, modifications, or reversals of existing law or for the creation of new law do not violate subdivision (b)(2) provided they are 'nonfrivolous.' This establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." *Adv. Comm. Notes*, 146 F.R.D. 401, 586-87 (1993).

discussed below, that the bad faith standard should be used for assessing sanctions *when initiated by show cause orders* under Rule 11(c)(3), where *no* safe harbor protections apply. To be clear, Respondent concedes the Court has *authority* to impose sanctions *sua sponte* under Rule 11(c)(3) and (c)(5)(B). Respondent is aware that in *Oak Grove Technologies, LLC v. United States*, 114 F.4th 1364 (Fed. Cir. 2024), the Federal Circuit affirmed *this* Court's imposition of Rule 11 sanctions using the objective reasonableness standard. But, in *Oak Grove*, the Federal Circuit did not address the argument and line of cases raised herein and so Respondent believes the issue remains open.

B.      **Why the Bad Faith Standard Should Apply to Show Cause Orders.**

The safe harbor procedures in Rule 11(c)(2), adopted in the 1993 amendments, provide a grace period of 21 days, following service of an *unfiled* motion, for a lawyer to pause, reflect and carefully consider whether to withdraw or modify an offending submission in whole or in part, before being subject to the imposition of sanctions under the Rule. *See* 5A FED. PROC.& PRAC. CIV. § 1337 (4th ed.). Yet, the drafters of the amendments *omitted* these protections for show cause orders under Rule 11(c)(3).  The Advisory Committee Notes explain why:

> *Since* show cause orders will ordinarily be issued *only* in situations that are *akin to a contempt of court*, the *rule does not provide a 'safe harbor'* to a litigant for withdrawing a claim, defense, etc., after a show cause order has been issued on the court's own initiative. Such corrective action, however, *should be taken into account* in deciding *what--if any--sanction* to impose if, after consideration of the litigant's response, the court concludes that a violation has occurred. 1993 *Adv. Comm. Notes,* 146 F.R.D. 577, 592 (1993) (Emphasis added.)

This shows a direct causal link between the drafters' understanding that courts ordinarily restrict their use of show cause orders to egregious conduct — and their knowing omission of the safe harbor procedures in Rule 11(c)(3). *See Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144 (4th Cir. 2002), citing the Advisory Committee Notes and stating: ". . . *thus it was unnecessary* for Rule

2

11's 'safe harbor' to apply to *sua sponte* sanctions." *Id*. at 151. (Emphasis added.) *See also Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998).

At least three circuits have concluded that the bad faith standard should apply in assessing sanctions under Rule 11(c)(3). At least two circuits, however, also considered the issue and disagreed. In *United National Insurance Company et al., v. R&D Latex Corp*., 242 F.3d 1102 (9th Cir. 2001), the court held that "while Counsel's actions are certainly no model of responsible advocacy, those actions were, on close examination, not so egregious as to merit *sua sponte* sanctions." *Id*. at 1116. *See also Muhammad v. Walmart Stores East, L.P.,* 732 F.3d 104, 108-09 (2nd Cir. 2013) (reversing sanctions because the attorney's conduct was "not enough to demonstrate subjective bad faith." *Id*. at 109.); *In re Pennie & Edmunds*, *LLP*, 323 F.3d 86, 88-93 (2nd Cir. 2003) (vacating, with one judge dissenting, a *sua sponte* award of sanctions and holding that the bad faith standard should have been used.); *Hunter v. Earthgrains Co. Bakery*, *infra*, 281 F.3d 144, 154 (4th Cir. 2002) (stating that for *sua sponte* Rule 11 sanctions ". . . a court is obliged to use extra care in imposing sanctions on the offending lawyer," citing *United National Insurance, infra,* and the Advisory Committee Notes.) In *Kaplan v. ChryslerDaimler*, 331 F.3d 1251, 1256 (11th Cir. 2003), the Eleventh Circuit weighed in, joining the basic reasoning of the Second, Fourth and Ninth Circuits, stating: "[W]e join those circuits in their 'akin-to-contempt' interpretation" but it found no need to assess respondent's "*mens rea*. The bad faith standard for *sua sponte* sanctions, however, were considered and rejected by the Fifth and First Circuits respectively in *Jenkins v. Methodist Hospitals of Dallas, Inc*., 478 F.3d 255 (5th Cir. 2007) and in *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33 (1st Cir. 2005).

The Federal Circuit, speaking more broadly about the judiciary's general approach to Rule 11 sanctions against attorneys in *1-10 Industry* Associates*, LLC v. United States*, 528 F.3d 859

3

(Fed. Cir. 2008), noted:

> A formal order of sanction of any kind imposed by a court necessarily tarnishes an attorney's professional reputation. Just as it is *the duty of the court* imposing sanctions to do so *only* when truly warranted, it is our duty on appeal to review the facts of such a case with great care to determine whether a sanction has been properly imposed. *Id*. 528 F.3d at 861. (Emphasis added.)

The bad faith standard for *sua sponte* Rule 11 sanctions aligns with the Rule's overall coherence and is fairer and more practical than the objective reasonableness standard and adheres to the expectation of judicial restraint contemplated by the Advisory Committee. The bad faith standard also advances the committee's general intention to "reduce the number of motions for sanctions presented to the court" and thereby limit the frequency of sanctions litigation. *Adv. Comm. Notes*, 146 F.R.D. 401, 586 (1993). Finally, widespread adoption of the bad faith standard for *sua sponte* sanctions could perhaps avoid the need for additional amendments to the Rule.

## C. The Federal Circuit and *Oak Grove.*

In *1-10 Industry Associates, infra*, this Court considered and rejected use of the bad faith standard for *sua sponte* sanctions. *1-10 Industry Associates*, 2007 WL 5160385 (Fed.Cl. 2007). But, on *appeal*, the Federal Circuit stated that it was not, at that time, addressing the issue, stating:

> Because Mr. Kiely does not challenge the test applied by the Court of Federal Claims, we are *not* called upon to decide whether the court applied the correct test. *We express no view on that issue* and instead review the facts of this case under the objective standard of reasonableness employed by the court. *Id*. 528 F.3d at 866.[2] (Emphasis added.)

And then in *Oak Grove*, the Federal Circuit affirmed *this* Court's imposition of *sua sponte* sanctions under Rule 11, stating: "The Court of Federal Claims did not abuse its discretion in determining that the government's conduct was not 'objectively reasonable' and, therefore,

---

[2] (Emphasis added).  Respondent makes his argument herein in part to avoid the waiver that the Federal Circuit found in *1-10 Industry Associates* and present it for the Court's consideration.

4

violated Court of Federal Claims Rule 11." *Id.* 114 F.4th 1364 at 1385. But there is no indication in their opinion that the Federal Circuit considered the split among circuits regarding the use of a bad faith standard for *sua sponte* sanctions. Rather, the sole issue addressed in *Oak Grove* as to the legal framework for *sua sponte* sanctions under Rule 11 was whether *monetary* sanctions should be limited. *Id.* at 1385. The issue therefore remains open for argument and consideration.

Finally, Respondent submits that under *either* the "bad faith" standard or the "objective reasonableness" standard, the "legal contentions" [that Respondent made] are warranted by existing law or by a non-frivolous argument for extending, modifying or reversing existing law or for establishing new law" and are therefore not sanctionable.

## II.    Responses to the Court's Questions Regarding the Four Legal Assertions.

In its Order, p. 3-4, this Court quoted four specific assertions from the plaintiffs' brief, ECF No. 61, and directed Respondent as follows:

> [F]or each quoted legal assertion, … Mr. Hearne shall: indicate whether the brief, ECF 61, cites any North Carolina legal authority in support of the assertion and, if so, (a) identify the authority and (b) on what page that authority is located;" And "if the brief, ECF 61, contains no citations to North Carolina legal authority in support of the referenced assertion, Mr. Hearne shall so state. With respect to any legal assertions in this latter category, Mr. Hearne shall nevertheless provide the single best North Carolina legal authority he can now locate in support of the referenced proposition (i.e., even if it is not in the brief), along with the precise language upon which he relies for that authority. Order, p. 4.

Respondent now turns to each of these assertions.

### 1. *ASSERTION: "North Carolina public policy strongly disfavors the creation of fee estates in strips or 'gores' of land and presumes that strips of land are easements for a specific purpose." ECF No. 61 at 20.*

### *RESPONSE:*

*(a)* and *(b)* Respondent acknowledges that ECF No. 61 did not cite any North Carolina legal authority expressly supporting this assertion.

*(c) Further Discussion*: ECF 61 refers to the common law strips and gore doctrine and the centerline presumption as a "background principle" of property law that applies to the interpretation of conveyances including strips of land used for railway lines and cited a number of authorities from other states. See ECF 61, p 20-22, and ECF 63, p. 15.[3] Respondent asserted that North Carolina follows those general principles of property law. Tr. p. 12, li. 21-24. ("[T]he general principles of North Carolina law would be what I was referring to - - though I didn't cite a case under that specific heading." Tr. p. 45, li. 19-21).

North Carolina, in fact, follows the common law centerline presumption and the related strip and gore doctrine of property law referenced in ECF 61.  N.C. Gen. Stat. Ann. § 1-44.2 provides: *Presumptive ownership of abandoned railroad easements*.

> (a) Whenever a railroad abandons a railroad easement, all right, title and interest in the strip, piece or parcel of land constituting the abandoned easement shall be presumed to be vested in those persons, firms or corporations owning lots or parcels of land adjacent to the abandoned easement, with the presumptive ownership of each adjacent landowner extending to the centerline of the abandoned easement…

> The side boundaries of each parcel so presumptively vested in the adjacent property owner shall be determined by extending the side property lines of the adjacent parcels to the centerline of the abandoned easement…

In *McDonald's Corp. v. Dwyer*, 432 S.E.2d 165 (N.C. App. 1993), *aff'd* 450 S.E.2d 888 (N.C. 1994), McDonalds claimed it owned the fee estate in land under an abandoned railroad easement. The Dwyers owned the fee simple estate in the land adjoining the abandoned railway line. Relying upon the centerline presumption codified in §1-44.2 the Dwyers claimed title to the fee simple estate in the land extending to the centerline of the adjoining abandoned railroad line.

---

[3] Citations to pages in ECF pleadings are to the page number designated on the ECF filing not the page number on the PDF format of the document as filed.

The North Carolina Court of Appeals ruled the Dwyers held title to the fee simple estate in the land under the abandoned railway line. "[I]t [is] clear that defendants have a property interest in the land at issue. Defendants hold title to the land, and the fee simple interest in property has been long recognized by law as a vested property interest." *McDonald's Corp. v. Dwyer*, *supra*, 432 S.E.2d 165 at 169. The North Carolina Supreme Court affirmed holding "the general rule is 'that a call for a monument as a boundary line in a deed will convey the title of the land to the center of the monument if it has width…' Subsection (a) of the statute [1-44.2] is consistent with this common law presumption insofar as it applies to abandoned railroad easements." 450 S.E.2d at 890–91.[4]

> ### 2. ASSERTION: "Under North Carolina law the only interest the railroad could acquire was a right-of-way easement." Id. at 24; see also id. at 30 n.12 ("North Carolina is not unique in its construction of railroad conveyances as granting only a right-of-way easement.").

*RESPONSE*:

*(a)* and *(b)* ECF 61, cites *Beasley v. Aberdeen & Rockfish R. Co.*, 59 S.E. 60, 62 (N.C. 1907). ECF 61, p. 28, n 10.

*(c) Further Discussion*: Respondent asserted, "a railroad corporation is a creature of state law and a railroad corporation's power and authority to acquire property … is defined by the public purpose for which the railroad corporation was chartered."[5]

---

[4] Citing, *Goss v. Stidhams*, 315 S.E.2d 777, 778 (1984) (quoting J. Webster, WEBSTER'S REAL ESTATE IN NORTH CAROLINA § 188 (Rev.Ed.1981). See also, *White v. Woodard*, 42 S.E.2d 94, 95 (N.C. 1947) where the North Carolina Supreme Court recognized the centerline presumption as a "general rule".

[5] ECF 61, p. 24. Citing *Naglee v. Alexandria & F.R. Co.*, 3 S.E. 369, 370 (Va. 1887), *Thomas v. Railroad Co.*, 101 U.S. 71, 83 (1879), RAILROADS AND AMERICAN LAW, and *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996 (*en banc*)) (*Preseault II*), applying this general principle to the construction of conveyances to a railroad. ECF 61, p. 24-29.

Respondent asserted "[t]he principles of Vermont law in the early 1900s, upon which the Federal Circuit relied in *Preseault II* are indistinguishable from North Carolina law in the early 1890s.

In *Beasley,* the North Carolina Supreme Court, citing cases from South Carolina and Vermont, stated:

> We have construed such grants of easements to railroads as conveying no more than may be reasonably within the contemplation of the parties. *Hodges v. Telegraph Co.,* 45 S.E. 572. [(S.C. 1903)]. … Illustrating the principle, Redfield, C. J., in *Hill v. Railroad,* 32 Vt. 68 [1859], says: "A contract to convey land for a particular use or to a party having capacity to acquire a certain estate in land for a particular use must of necessity carry the implication of such limitation upon the estate to be conveyed." The grant of such easement as is necessary or convenient for the operation of "said road" should be confined to such "tram or railroad" as the charter authorized the grantee to construct and operate. *Id*. at p. 62

*Beasley's* adoption of Justice Redfield's decision in *Hill* is particularly relevant because Justice Redfield's decision in *Hill* was one of the leading authorities upon which the Federal Circuit relied in *Preseault II.*

> The [Vermont Supreme Court] court observed that railroads acquire needed land either by order of a designated public body (through the exercise of eminent domain) or by consent of the landowner, although even in the latter case "the proceeding is, in some sense, compulsory." *Id*. at 75. Thus,
>
> > In either mode of appropriating land for the purposes of the company, there is this implied limitation upon the power, that the company will take only so much land or estate therein as is necessary for their public purposes. It does not seem to us to make much difference in regard to either the quantity or the estate whether the price is fixed by the commissioners or by the parties. *Id*. at 76.
> >
> > The court held that the estate which [the owner in *Hill*] was to convey would be "a mere easement for a particular use,"... *Id.* at 77

> *Preseault II,* 100 F.3d at 1536.

Citing *Hill* and *Troy & Boston R.R. v. Potter*, 42 Vt. 265, 272 (1869). *Preseault II* went on to hold, "On balance it would seem that, consistent with the view expressed in *Hill,* the proceeding

---

Indeed, the relevant law in both Vermont and North Carolina were identical in the 1890s and early 1900s." ECF 61, p. 27. Respondent cited Vermont Chief Justice Issac Redfield and his work, THE LAW OF RAILWAYS (3rd ed.1867). *Id*. Respondent collected the authorities from nine other states including Georgia, Vermont, Texas, Kansas, New York, Ohio, Missouri, Illinois, and Iowa that follow this same common law principle. ECF 61 at 28, fn 10.

retained its eminent domain flavor, and the railroad acquired only that which it needed, an easement for its roadway. … [T]he trial court's conclusion that the estate conveyed was an easement is affirmed." *Id.* at 1537.

In addition to *Beasley*, cited in ECF 61, other North Carolina opinions affirm this same principle that conveyances of strips of land to railroads in the late 1800s and early 1900s granted the railroad an *easement* not title to the fee simple *estate* in the strip of land itself. Respondent asserted that the railroad's interest in strips of land was limited to only that interest necessary to accomplish the purpose for which the railroad had been established (*i.e.* operating a railroad). ECF 61, p. 20, and ECF 63, p. 12. In *Tighe v. Seaboard Air Line R. Co.*, 97 S.E. 164, 166–67 (1918), the North Carolina Supreme Court stated:

> Indeed, our decisions are uniform that when a railroad company has acquired the right of way by condemnation *or by purchase* of the right of way, the deed not limiting the conveyance to less than the statutory width.[6] (Emphasis added.)

Similarly, *Raleigh & A. Air-Line R. Co. v. Sturgeon*, 26 S.E. 779, 780 (1897), held, "It was distinctly announced that the right which railroad companies acquire in lands condemned for their rights of way amounts to an easement and not to the purchase of the estate of the owner."[7] In *Sparrow v. Dixie Leaf Tobacco Co.,* 61 S.E.2d 700, 702–03 (N.C. 1950), the court explained, "[T]he … railroad acquired its right-of-way under a duty and by virtue of Sec. 27, Ch. 136 Laws of 1852, it thus acquired and possesses nothing more than an easement for railroad purposes with the right of actual possession of so much thereof as is necessary for the operation of its road and

---

[6] See also, *Seaboard Air Line R. Co. v. Olive*, 55 S.E. 263 (N.C. 1906), *Raleigh & A. Air-Line Co. v. Sturgeon*, 26 S.E. 779 (N.C. 1897), *Carolina Cent. R. Co. v. McCaskill*, 94 N.C. 746 (1886), *Barker v. Southern Ry. Co.*, 49 S.E. 115 (N.C. 1904).

[7] "This is what was in contemplation when the railroad charters were granted, when the right of way was laid out, and when the road was constructed." 26 S.E. at 780–81. *Citing, Blue v. Aberdeen & W.E.R. Co.*, 23 S.E. 275 (N.C. 1895).

9

to carry on its business as a common carrier of freight and passengers with dispatch and convenience. …"

> 3. *ASSERTION: "The government wrongly claims that North Carolina law mandates that any conveyance concerning an interest in real property must be presumed to convey title to the fee simple estate. Simply put[:] [t]he government's argument is meritless and frivolous. These provisions of North Carolina law do not apply to servitudes such as easements. These provisions concern the construction of conveyances that apply to estates in land." Id. at 32 (emphasis in original) (citing North Carolina Stat. § 1280 (1883) and N.C. Gen. Statute § 39-1 (2024)).*

*RESPONSE***:**

*(a)* and *(b)*. ECF 61 does not cite a North Carolina case that expressly supports this proposition.

*(c) Further Discussion*: Respondent argued the presumption in §39-1 does not "apply to *servitudes* such as easements. Section 39-1 applies to the construction of conveyances of *estates* in land." ECF 61, p. 32. (Italics in original).[8]  The Court noted, "I have to admit I see his point a little bit … I kind of see his point, which is that maybe what the Court should do is construe it [the conveyance] first, and if it doesn't apply to easements, then the statute [§39-1] is out."  Tr. p.  59, li. 10-18.

North Carolina adopted §39-1 in 1879, providing:

When real *estate* is conveyed to any person, the same shall be held and construed to be a conveyance in fee, whether the word 'heir' is used or not, unless such conveyance in plain and express words shows, or it is plainly intended by the conveyance or some part thereof, that the grantor meant to convey an *estate* of less dignity.[9] (Emphasis added.)

In ECF 63, p. 12-13, Respondent cited *Mahlow W. DeLoatch, Jr., Future Interests – The Rule in Shelly's Case, WAKE FOREST INTRA MURAL L. REV. 132* (January 1968), in support of

---

[8] ECF 61, p. 25-26 and ECF 63-1, p. 11 – 13.

[9] See ECF 53-1, and *Lackey v. Hamlet City Bd. of Ed.*, 128 S.E.2d 806, 808 (N.C. 1963).

10

the contention that §39-1 applies to conveyances of estates in land (such as future estates and life estates) not servitudes such as an easement. Respondent cited the DeLoatch article as authority explaining the reason why North Carolina adopted §39-1 and statutes reforming the interpretation of conveyances of estates in land. See DeLoatch, p. 145-148.

> Well, the law review article that we've attached gives a number of examples of these kind of conveyances where the statute is used to apply and the presumption is. So when there's confusion about was this just a life estate that was being conveyed or was it a remainder interest, what is the language in the deed? And the statute was adopted to avoid those kind of disputes over future interests in estates.
>
> And it used to be they had very strict drafting rules. You had to use words like "and the heirs of his body," things of that nature, to make sure it was an estate that was being conveyed … what the statute did is said, we're going to simplify this, we're going to create a presumption that this kind of conveyance of an estate is presumed to convey the grantor's entirety of their interest in the estate and not to reserve an interest in the estate in ...

Tr. p. 51, li. 2-20.

Respondent's point was that, under North Carolina law, §39-1 applies to conveyances of an *estate* in land and does not by its own terms apply to conveyances of a *servitude* to use land, such as an easement. ECF 61, p. 32-33, ECF 63, p. 16-17, Tr. p. 49. During argument, Respondent also cited *Vickers v. Leigh*, 10 S.E. 308, 310–11 (N.C. 1889) in support of this explanation of why North Carolina adopted §39-1. Tr. p. 13.[10]

---

[10] *Vickers* explained:

> The trend of judicial decisions for years has been towards relaxing the rigor of the common-law rule that without words of inheritance no *estate* of greater dignity than for life could be created … Then followed the liberal principle in the act of 1784 … that a devise of real *estate* to any person should be held to be a devise in fee, unless it plainly appears from some part of the will that the testator intended to convey *an estate* of less dignity … The idea of giving effect to the grantor's purpose, gathered from every part of his deed, led this court … to announce the doctrine that when the court was entirely satisfied, from the declared purpose and nature of a deed, and the context of that portion where the word "heirs" would naturally belong, that it was the intention of the grantor to convey a fee-simple, and the omission was

11

Respondent argued §39-1 does not apply to the interpretation of the conveyances in this case because §39-1 is not triggered because the statute only applies to conveyances of an *estate* in land not *servitudes*. Tr. p. 32-33.[11] In other words, Respondent's argument has *not* been that the presumption is overcome, but rather that no presumption arises.

> **4. ASSERTION: "The other features of these conveyances [at issue], [including] the nominal consideration paid and the description by reference to an existing rail line that had already been surveyed and located by the railroad, suggest that the grantor intended an easement."** *Id.* at 33.

**RESPONSE:**

Plaintiffs concede that if the conveyances at issue here were the same as the Barnes deed in *McCotter v. Barnes,* 101 S.E.2d 330 (N.C. 1958)*,* the court's holding in *McCotter* would control. Tr. p. 23-26.  Respondent argued, however, that these conveyances are distinguishable from those in *McCotter*. Tr. p. 21-24.

North Carolina requires conveyances to be interpreted to achieve the intent of the grantor and to construe that intent considering the entire text of the document. *Triplett v. Williams*, 63 S.E. 79 (N.C. 1908).[12] ECF 61, p. 16-18. The conveyances at issue here are those instruments these

---

an oversight... (Emphasis added.)

[11] North Carolina is not unique. Florida's similar statute is presently pending before the Federal Circuit in *Barron, et al. v. United States*, Case No. 25-1179.

[12] See also, *Lackey v. Hamlet City Bd. of Ed*., 128 S.E.2d 806, 808 (N.C. 1963) ("[T]he intent of the parties as embodied in the entire instrument is the end to be attained," *Seawell v. Hall,* 116 S.E. 189, 191 (N.C. 1923).  ("In the construction of deeds, the primary rule is to ascertain the real intention of the parties and then to give it effect, unless such intention is controlled by an arbitrary rule of law.") *Shephard v. Horton*, 125 S.E. 539, 539 (N.C. 1924). ("In the construction of deeds, the primary rule is to ascertain the real intention of the parties and then to give it effect, unless such intention is controlled by an arbitrary rule of law, as in Shelley's case.")

Plaintiffs' predecessors-in-title executed in 1894.[13] The Ledbetter conveyance, ECF 59-10, is typical and includes provisions materially similar to those of the Wilson conveyance quoted in ECF 61, Tr. p. 15-16.

> In consideration of the benefits to be by him derived by the construction of its railroad *through* my premises …:
>
> I, Richard Ledbetter… do give grant, bargain sell, and convey to the [railroad], and its successors, forever, a strip of sufficient width *upon which* to locate construction operate and maintain a standard gauge railroad *through said premises* as is or shall be staked out marked out by the engineer or engineers of said company … provided that this deed shall be void unless the said railroad shall have constructed a railroad *through said premises* on or before the first day of August, 1895. Provided further … said company shall not destroy nor interfere with the buildings on said premises without my consent firsthand and obtained.  (Emphasis added.)

Respondent asserted these conveyances demonstrate the grantor intended to grant the railroad a *servitude* to use the strip of land for a railway line and not to convey the railroad title to the fee simple absolute *estate* in the strip of land itself.  Respondent noted these conveyances do not contain the provisions typical in instruments conveying title to the fee simple absolute *estate* such as warranties of title and seizen; nor do these conveyances describe the railroad interest as a fee simple estate. Tr. p. 22. Respondent argued these conveyances should be interpreted as the Federal Circuit did in *Preseault II*.  ECF 61, p. 25-29.  Respondent asserted that North Carolina law was the same as Vermont law on the relevant rules of construction.  ECF 61, p. 20.

### III.    The North Carolina Statute, the DeLoatch Article and *McCotter v. Barnes.*

In its Order, in addition to the four legal assertions discussed above, the Court also required Respondent to address his representations in connection with a North Carolina statute, a law review article and *McCotter*.

---

[13] ECF Nos. 51 (government's motion for summary judgment), and 59 Ex. 2A – 2K (plaintiffs' statement of uncontroverted facts).

*[W]ith respect to the North Carolina statute at issue … (§ 39-1), Mr. Hearne during oral argument asserted that a law review article he cited in his reply brief, ECF 63, includes North Carolina case law supporting Plaintiffs' argument that the statute does not apply to servitudes. ECF 63 at 12-13 (attaching Mahlow W. DeLoatch, Jr., FUTURE INTERESTS – THE RULE IN SHELLEY'S CASE, 4 WAKE FOREST INTRA MURAL L. REV., 132 (January 1968)); see also Tr. 63:20— 64:10… in response to this show cause order, Mr. Hearne shall further quote for this Court the language from that law review article — not to exceed five sentences and one North Carolina case citation — that he believes best supports the argument he made in his opening brief ...* Order, p. 4-5.

**RESPONSE:**

Respondent cited DeLoatch to explain why North Carolina adopted the presumption in § 39-1 and asserted that §39-1 applied to conveyances of an *estate* not a *servitude*. ECF 63, p. 16-17, Tr. p. 64. The DeLoatch article explains that North Carolina adopted §39-1 to reform ancient feudal technicalities concerning conveyances of *estates* in land such as the Rule in Shelly's Case and the requirement that the grantor must include the phrase "and the heirs of his body" to convey a fee simple absolute estate. ECF 63, p. 17, Tr. p. 51. Tr. p. 33. ("the statute would be addressing future interests in estate of land, which is why it would not apply to a servitude.") Tr. p. 33, li. 7-10.

Respondent asserts that §39-1 does not apply to grants of servitudes in land. *Servitudes,* such as easements, are not an *estate* in the land. ECF 61, p. 30-32, Tr. p. 46.[14] Respondent

---

[14] See *RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES*, Bruce and Ely's, *THE LAW OF EASEMENTS AND LICENSES IN LAND*, *Leo Sheep Co. v. United States*, 440 U.S. 668 (1979), and *Marvin M. Brandt Revocable Trust v. United States*, 572 U.S. 93 (2014). In *Whitley v. Arenson*, 12 S.E.2d 906, 908 (N.C. 1941), the court stated,

> At common law, in order to convey an estate of inheritance it was necessary that the word "heirs" appear in connection with the name of the grantee, either in the premises or in the habendum of the deed. 2 Blk. 298; *Carolina Real Estate Co. v. Bland, supra*…. But this statute did not purport to change, and does not change, a common–law conveyance of inheritance to a conveyance of less effectiveness, *i. e.*, to one conveying only a life estate. Quite the reverse was intended and accomplished by the statute. No Act of Assembly has been found which purports to convert words of inheritance into words of purchase. (Citations omitted.)

contended that, only after *first* determining that the grantor – considering the text of the entire document – intended to convey an estate in the land and not a servitude, does §39-1 become relevant.

> ***Mr. Hearne shall further explain how he could possibly rely on [the DeLoache law review] in the face of …** **McCotter, Craig v. Southern Ry. Co., Ruffin v. Seaboard Air Line Ry., 66 S.E. 317 (1909), Crawford v. Wilson, ...*** Order, p. 5.

**RESPONSE:**

Respondent asserted that the presumption in § 39-1 that a grantor intended to convey the entirety of the grantor's fee simple estate does not apply because the 1894 conveyances were not conveyances of an *estate* but were rather a grant of a *servitude*. Respondent argued that the 1894 conveyances here are, thus, distinguishable from the conveyance in *McCotter*.

*McCotter* considered a conveyance from Barnes and his wife to the Carolina Land and Improvement Company. *McCotter* held at 334,

> [T]he instant deed is a regular form deed of bargain and sale. It recites a valuable consideration. Upon the facts agreed and, on this record, the deed is presumptively a deed of purchase within the meaning of the section of the Act of 1871-1872 now codified as G.S. §60-37(4). This being so, the deed must be interpreted as an ordinary deed. When this is done, it is manifest that the deed conveys title in fee simple: … The granting clause in the Barnes deed conveys an unqualified fee-simple estate.

The court concluded the Barnes deed conveyed the fee-simple estate, and not an easement, because of several features in the Barnes deed.

> The habendum clause places no limitation on the estate in fee conveyed by the granting clause: '*To Have and To Hold*, the aforesaid tract or parcel of land as above described together with all the rights, ways, privileges and easements thereunto belonging or in anywise appertaining unto it the said party of the second part its successors and assigns." *Id. (emphasis supplied).*

*McCotter* noted, the Barnes deed included

15

"Covenants of seizin and warranty [that] harmonize with the fee previously granted: 'And the [grantors] on behalf of themselves their heirs and assigns hereby covenant to and with the said party of the second part on behalf of itself, its successors and assigns as follows, to wit: 1st. That they are seized of the said property above conveyed in fee. * * * 3rd. That they will forever warrant and defend the title to the said land against the lawful claims of any and all persons Claiming by Through or Under Them." *Id*

*McCotter* held that "[s]ince *all the operative clauses of the deed refer to a fee-simple estate, without restriction or limitation*, it necessarily follows that no ambiguity or contradiction is disclosed by these clauses. Hence, as to these clauses there is no need for application of the ordinary rules of construction." *Id.* (Emphasis added).

*After first* concluding that the Barnes deed conveyed an "unqualified fee-simple estate" and noting it is 'a rule of law that where *the entire estate in fee simple in unmistakable terms*, is given to the grantee in a deed" the *McCotter* court looked to G.S. §39-1. *Id* at 335.[15]

The Barnes deed in *McCotter* is distinguishable from the conveyances at issue here because the Barnes deed provided that the grantor,

"[has] *given, granted, bargained, and sold* and by these presents do hereby *give, grant, bargain and sell* … That *they are seized of the said property* above *conveyed in fee* ... That the same is free and clear from any and all encumbrances. [And] that they will forever *warrant and defend the title* to the said land against the lawful claims of any and all persons ... *Id* at 332. (Emphasis added.)

The Barnes deed also provided,

"[n]evertheless, … if the [railroad] shall fail to build, complete and put in operation a Rail Road … on the land above described within a period of five years from the date hereof then *the estate* hereby conveyed is to cease and determine and the property hereby conveyed *is to revert* to and become the property of the grantors herein. But if a Railroad … shall be built … within the period above provided, then and in that event *this conveyance is to become absolute without the power of revocation* from any cause whatsoever… *Id*. 332, (emphasis supplied.)

---

[15] (emphasis supplied) (citing *Artis v. Artis*, 47 S.E.2d 228, 238 (1948).

The conveyances here do not: (1) describe the interest "given, granted, bargained, and sold" to the railroad using terms, such as "reverter" that describe an *estate* in land as opposed to a *servitude*.[16]  (2) contain a covenant of seizen or warranty of title; (3) include the words "to have and to hold" nor (4) describe the interest granted as an "estate,*"* nor describe the *estate* becoming "absolute".

Throughout his briefing and argument, Respondent relied upon the distinction between an *estate* in land as distinguished from a *servitude* granted to use land for a specific purpose. This distinction is a central point in Respondent's argument.  If the grantor did not intend to convey an *estate* in land, then G.S. §39-1 is not triggered. For G.S. §39-1 to apply, the court must *first* conclude the grantor intended to convey an *estate* in the land and not a *servitude* to use the land for a specific purpose. Tr. p. 46, 59-60.

Thirty years after *McCotter,* the North Carolina Court of Appeals in *International Paper Co., v. Hufman*, 345 S.E.2d 231, 233 (N.C. App. 1986), considered whether a 1840s conveyance to a railroad granted the railroad an easement or title to the fee simple estate in a strip of land:

> The controlling issue is whether a deed made by William Brinkley to the [Railroad] in 1849 conveyed fee simple title or only an easement in the strip of land…If the deed conveyed only an easement, the estate of the railroad company ceased and terminated when its tracks were removed and the railroad was abandoned… Upon reviewing the deed, we hold that the deed conveyed only an easement for railroad purposes and not a fee simple title.

The conveyance in *International Paper* provided,

> Whereas it is contemplated to construct a Rail Road …whereas the benefits and advantages of the establishment of said Rail Road to the … owners and proprietors of the lands through which the same will pass … [will exceed the damage and burden to the property], … [Grantor] has have given, granted and surrendered  and by these presents do give, grant and surrender to [railroad] the right and privilege by their agents and servants to enter upon each and every tract or parcel of land belonging to or held by me, wheresoever the same may be situated through which

---

[16] See *Preseault II*, 100 F.3d 1525 at 1533-34.

17

they may desire to construct their Rail Road; to lay out and construct their said Road on such lands according to their pleasure; and to lay out, use, occupy and possess such portions of said lands contiguous to said Rail Road…To have and to hold the before granted lands with the rights and privileges aforesaid unto the said [railroad company] and their assigns for the uses and purposes aforesaid forever.

*Id*. at 233-234.

*International Paper* then distinguished *McCotter* noting, "No land is conveyed by this language, only the right and privilege to the railroad company to enter upon the lands of Mr. Brinkley and lay out its railroad line, not to…title to the land itself, subject to such right of way or easement, remained in Mr. Brinkley." *Id.* at 234. The court cited *Beasley* and *Railroad v. Olive* explaining,

> *McCotter* is distinguishable from the case at bar.  In that case the deed in question was held to have conveyed to the railroad the land in fee simple.  The granting clause of the deed in the *McCotter* case recited that " 'said parties of the first part…have given, granted, bargained and sold by these presents do hereby give, grant, bargain and sell unto the party of the second part, its successors and assigns, a tract or parcel of land…Here the granting clause conveyed only right and privilege to enter upon the lands and construct a railroad. *The deed in McCotter contained covenants of seizin and warranty reciting that the grantors were seized of the property conveyed in fee and would defend such title.* Here there are no covenants of seizing and warranty.

*Id*. at 234. (Emphasis added).

The court then held, "In sum, we hold that the Brinkley deed conveyed only an easement and the estate of Seaboard ceased and terminated when it ceased rail traffic and removed its tracks." *Id*. at 234.

The Court also directed Respondent to explain why *Craig v. Southern Ry. Co.,* 138 S.E.2d 35 (1964)*, Ruffin v. Seaboard Air Line Ry*., 66 S.E. 317 (1909)*,* and *Crawford v. Wilson*, 257 S.E.2d 696 (N.C. App. 1979), do not support the proposition that *McCotter* holds this Court should apply §39-1 to presume the grantors of the conveyances in this case intended to convey the entirety of the grantors' fee simple estate in the strip of land to the railroad.  Order,

18

p. 5.

*Craig* described the interest granted the railroad as "TO HAVE AND TO HOLD the same for railroad purposes *in fee simple* forever." 138 S.E.2d at 36. (Capitalization in original, italics added.) The conveyances in this case do not contain such language and do not describe interest conveyed the railroad as a fee simple estate as opposed to a servitude.

*Ruffin* considered whether an easement the grantor retained providing the grantor could use the land for a warehouse was an interest in the land that was "salable and assignable" when the conveyance document did not include words of inheritance such as "and the heirs of his body." *Ruffin* held the grantor's reserved interest in the land "was at the least a determinable fee, even without words of inheritance, or without construction to ascertain the intent of the parties to the deed and under it the perpetual user of the land for warehouse purposes was retained." *Id*. at 320. (Citations omitted). The Court then held the grantor's retained interest was inheritable, assignable and transferable. The Court stated, "[n]o rights of the defendant railroad as a common carrier in respect to rights of way, etc. are involved.  It is not a question of permissive user of a part of its right of way, which cannot ripen into an easement, but this is the exception to a portion of the land granted or a reservation at the least of it to the grantor." *Id*. at 320.  *Ruffin* did not consider §39-1.

*Crawford* considered a deed in which the granting clause stated the grantor "do[es] give, grant bargain, sell, convey and confirm unto [the railroad] his heirs, and assigns all the following described real estate: Right of way." *Id*. at 697.  The trial court held "the words 'right of way' usually connote an easement" … Giving effect to these words, we hold the deed did not convey a fee simple interest." *Id*. The opposing party appealed arguing that G.S. 39-1 and *McCotter* "require that we hold the deed conveyed a fee simple title to the property."  *Id*.

19

*Crawford* rejected this argument and held that application of this statute [39-1] …" it was plainly intended by the conveyance to convey an estate of less dignity than fee simple." *Id*. *Crawford* then held "reading the deed as a whole and giving effect to all its parts as we are required to do … we hold that the deed … conveyed an easement" not title to the fee simple interest in the land. *Id*.

Accordingly, *Craig*, *Ruffin,* and *Crawford* do not contradict Respondent's assertion that §39-1 applies to *estates* and not *servitudes* and that *McCotter* does not compel a contrary conclusion.

## CONCLUSION

Respondent most sincerely wishes to assure this Court that all of his representations and arguments made in connection with the cross-motions for summary judgment were made in complete good faith and without any intention whatsoever to mislead the Court. Further, while Respondent maintains that, as several circuit courts have held, the bad faith standard, rather than a standard of objective reasonableness should be applied to the assessment of sanctions for show cause orders under Rule 11(c)(3), Respondent also submits, for all the reasons stated herein, that under *either* standard his arguments are not sanctionable. Whether or not this Court ultimately concludes that the 1894 conveyances granted the railroad easements or title to the fee simple absolute estate in the land, Respondent's contentions cannot be fairly characterized as frivolous or otherwise so lacking in authority or legal reasoning as to violate Rule 11(b)(2).

Respondent therefore respectfully urges this Court to conclude that sanctions against him shall not be imposed. Further, Respondent asks the Court to consider vacating its Order to Show Cause and thereby prevent any harm to his professional reputation and standing that might be caused by the permanent maintenance of the Order on the public record.

20

Respectfully submitted,

/s/ Mark F. (Thor) Hearne, II
MARK F. (THOR) HEARNE, II
True North Law, LLC
112 S. Hanley Road, Suite 200
St. Louis, MO 63105
(314) 296-4000
thor@truenorthlawgroup.com

*Counsel for the Landowners*

Arthur D. Burger
ARTHUR D. BURGER
Jackson & Campbell, p. C.
2300 N Street, N.W., Suite 300
Washington, D.C. 20037
(202) 457-1600
aburger@jackscamp.com

*Counsel for Mark F. (Thor) Hearne, II*
*Joining the Response as to Rule 11 Standards*